**Ralph HALL, Plaintiff-Appellant,**

v.

**DIAMOND M COMPANY, et al.,**
**Defendants-Appellees.**

No. 82–3629.

United States Court of Appeals,
Fifth Circuit.

May 29, 1984.

Richard A. Thalheim, Jr., Thibodaux, La., for petitioner-appellant.

Hailey, McNamara, McNamara & Hall, Michael P. Mentz, Metairie, La., for Diamond M.

Camp, Carmouche, Palmer, Barsh & Hunter, Brian G. Meissner, New Orleans, La., for Transocean Contractors.

Before RUBIN and RANDALL, Circuit Judges, and SEAR *, District Judge.

PER CURIAM.

Plaintiff, Ralph Hall, was injured on November 4, 1981 while employed as an "offshore rigger" by defendant Transocean Contractors ("Transocean"). At the time of plaintiff's injury, Transocean was under contract with defendant Diamond M Company ("Diamond M") to provide the labor and small tools necessary to move the Century, a submersible drilling rig owned by Diamond M and then situated in the Gulf of Mexico.

To assist in moving the drilling rig, Diamond M chartered a vessel, the M/V Point Fortune, specially outfitted with powerful winches for lifting from the ocean floor the heavy anchors which held the drilling rig in place. Hall was assigned to the anchorhandling crew aboard the vessel and also lived and ate on the vessel. He was injured when one of the cables with which he was working knocked him to the deck of the M/V Point Fortune.

Hall brought suit for negligence under the Jones Act and for maintenance and cure under the general maritime law against his employer, Transocean, and Diamond M, which he alleges to be his pro hac vice employer. He also sued the vessel in rem and Diamond M as its charterer under the general maritime law for unseaworthiness. Thereafter, Hall brought a motion for summary judgment to be recognized as a seaman entitled to maintenance and cure. The district court denied the motion for summary judgment on maintenance and cure; however, plaintiff was instructed to move for an expedited evidentiary hearing on that claim. Following the hearing, the

* District Judge of the Eastern District of Louisiana, sitting by designation.

trial judge ruled as a matter of law that the plaintiff was not a seaman within the meaning of the Jones Act and denied his motion for maintenance and cure. Diamond M then moved for summary judgment on the claims against it on the grounds that Hall was not its borrowed servant and that it neither owned nor operated the vessel. The motion was granted and plaintiff appealed.

On appeal, Hall argues, first, that the trial court applied an improper standard in determining his status as a seaman for purposes of maintenance and cure, and, second, the trial court erred in determining as a matter of law on summary judgment that Hall was not Diamond M's borrowed servant.

## SEAMAN'S STATUS

Although he was hired as an offshore rigger, at the time of his employment Hall agreed to work onshore if there was no work available offshore. Up until the date of his injury, plaintiff had worked 128 hours on land and 227 hours offshore. On land, he performed various odd jobs, including painting and sandblasting around the Transocean yard. He spent a few days working at a duck camp. While offshore, he worked exclusively as an anchorhandler. Transocean's employment records indicate that Hall was on his third trip offshore when he was injured. He had worked once previously on the M/V Point Fortune for a few days and before that on another vessel for two days. Testimony at the hearing indicated that the anchor-moving jobs usually lasted from two to five days. The anchorhandlers remained on the vessel supplied to Transocean the entire time. Because various vessels were supplied to Transocean by its customers, there was no single vessel or particular fleet of vessels to which the anchorhandlers might be assigned.

■ Only seamen are entitled to the benefits of maintenance and cure. The standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act. *Stokes v. B.T. Oilfield Services, Inc.*, 617 F.2d 1205, 1206 (5th Cir.1980). In *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959), we held that seaman's status is a factual question to be decided by a jury "(1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips."

■ The question of seaman status is a mixed question of law and fact. *Holland v. Allied Structural Steel Co., Inc.*, 539 F.2d 476, 479 (5th Cir.1976). Therefore, summary judgment is improper "except in cases where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about [the] facts...." *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir.1981)).

■ The district judge apparently believed that Hall satisfied the second prong of the *Robison* test. In his reasons, the district judge wrote that "plaintiff was subjected to the perils of the sea as are blue water seamen, and was engaged in classical seaman's work...." It was the first prong of the test that Hall failed to satisfy. Specifically, the trial judge found that Hall had not been "assigned permanently to a vessel" as that phrase had come to be understood. Although he recognized that the worker may be a member of a crew of numerous vessels, he found, relying on *Bertrand v. International Mooring & Marine, Inc.*, 517 F.Supp. 342 (W.D.La.1981), that "[t]o be a member of a crew of numerous vessels requires that the group or fleet of vessels act together or form a recognizable unit." Since there was no connection among the vessels within the pool of vessels on which Hall might be assigned to

work, the Court found that the *Robison* test was not satisfied.

The holding and reasoning of the district court in *Bertrand,* upon which the district court relied, has now been overruled. In *Bertrand v. International Mooring and Marine, Inc.,* 700 F.2d 240, 245 (5th Cir. 1983), we held that common ownership or control over the vessels on which the plaintiff worked was not essential to seaman status, reasoning that "we will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned." Since the record reveals "evidence from which reasonable persons might draw conflicting inferences" a jury determination is necessary on the issue of seaman status.

## BORROWED SERVANT

■ The second issue before us is whether the trial court erred in holding as a matter of law on the record before it that Hall was not a borrowed servant of Diamond M.

We recently explained that "[t]he borrowed servant doctrine is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer. It permits the injured worker to recover from the company that was actually directing his work. It may also determine which of the possible employers ultimately bears the cost of the injury." *Baker v. Raymond International, Inc.,* 656 F.2d 173, 178 (5th Cir.1981).

Among the considerations for determining whether a servant has been borrowed by another employer are:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who has the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Gaudet v. Exxon Corp.,* 562 F.2d 351, 355 (5th Cir.1977) (citing *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 312–13 (5th Cir.1969)). Although "no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship ..." *Ruiz v. Shell Oil Co., supra,* 413 F.2d at 312, in *Hebron v. Union Oil Co. of California,* 634 F.2d 245, 247 (5th Cir. 1981), we stated that "[t]he central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work."

■ In support of its motion for summary judgment, Diamond M argued that the following facts were established by the record: (1) plaintiff was an employee of Transocean; (2) Diamond M did not own or operate the M/V Point Fortune; (3) plaintiff took orders only from the Transocean foreman, Ike Thibodeaux, and not from anyone from Diamond M; (4) no one from Diamond M was aboard the vessel when plaintiff was injured; and (5) Diamond M never directly paid Ralph Hall nor was there any agreement between Diamond M and Transocean for Diamond M to do so.

No contravailing evidence was submitted with plaintiff's opposition memorandum. Instead, he relied on an affidavit previously filed in the record to establish genuine issues of material fact.

On this record, the district judge found "that plaintiff has in no way established that he is Diamond M's 'borrowed servant.'" In ruling on a motion for summary judgment, "the court must indulge every *reasonable* inference from those facts in

favor of the party opposing the motion." *AT & T Co. v. Delta Communications Corp.,* 590 F.2d 100, 101–02 (5th Cir.) *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). And, in order for summary judgment to be granted, "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party, that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc); *Baker,* 656 F.2d at 179. Rule 56(c), Fed.R.Civ.P., requires the Court to take into account "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in considering whether there exists a material issue in dispute. We hold that the record in this case does not contain undisputed facts sufficient to rule out a borrowed servant relationship.

Among the 24 paragraphs of plaintiff's affidavit are the following statements:

"(3) The specified vessels to which I have been assigned as a member of the crew include the M/V Fortune, on which I have spent a substantial part of my time while employed by Transocean Contractors, Inc., and Diamond M Company.";

"(4) The time which I spent aboard the M/V Fortune has been spent as a crew member of the M/V Fortune, working for Diamond M Company and Transocean Contractors, Inc., as a seaman."

"(13) At the time I was injured, I was working for Transocean Contractors, Inc., and doing work of Diamond M Company at the time of my injury."

The record also indicates that Diamond M provided the M/V Point Fortune for Transocean's use and that at the time of his injury plaintiff was engaged in moving a Diamond M rig. Finally, although plaintiff testified at the hearing on maintenance and cure that he took orders only from Ike Thibodeaux, the Transocean foreman, the record is unclear as to whether Thibodeaux received his instructions from Diamond M personnel.

Accordingly, we REVERSE the judgment of the district court, and we REMAND this case for further proceedings not inconsistent with this opinion.