M. Lane POWERS, Plaintiff-Appellant,

v.

NASSAU DEVELOPMENT CORP., Houston Natural Gas Corp. and Thermal Resources, Inc., Defendants-Appellees.

No. 83–2690.

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1985.

**458**

Jack D. Nolan, Houston, Tex., Yocel Alonso, Robert J. Vanderlyn, Bellaire, Tex., for plaintiff-appellant.

Jeffrey H. Hubbard, Houston, Tex., for Nassau Dev.

Vinson & Elkins, Max Hendrick, III, Alison L. Smith, David M. Bond, Houston, Tex., Ann M. Ashton, Washington, D.C., for Houston Nat'l Gas.

Lionel M. Schooler, Houston, Tex., for Thermal.

Before GARZA, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Powers sues three defendants, allegedly co-conspirators, for treble damages, 15 U.S.C. § 15(a), arising from their alleged violations of the Sherman Act, 15 U.S.C. §§ 1–7 and the Clayton Act, 15 U.S.C. §§ 12–27, by their agreements and acts in restraint of trade and competition. Powers alleges that, as a result of this illegal conspiracy, he was required to enter into a contract to pay grossly inflated prices for a product he was compelled to buy. Powers appeals from summary judgment that dismissed his suit as time-barred, because not commenced within the four years after his statutory causes of action arose, as required by 15 U.S.C. § 15b.

We reverse. Summary judgment was precluded by the plaintiff Powers' factual showing of sufficient significant probative force to raise a genuine issue of material fact as to whether a continuing conspiracy resulted in an overt act, the filing of a state-court suit to enforce an illegal contract, within the four-year limitations period prior to the present suit.

*Overview of the Principal Factual and Legal Issue*

The ultimate basis of the plaintiff Powers' cause of action stems from a 1963 agreement between two of the three defendants, Nassau (a land development company) and Houston Gas (a public utility). As will be explained more fully, by this agreement those who in the future purchased land from Nassau were required to obtain heating and chilling services exclusively from Houston Gas at rates to be fixed by agreement between Nassau and Houston Gas.

The factual showing supports a (disputed) finding, sufficient for summary judgment purposes, that the plaintiff Powers, when he purchased land in 1973 from Nassau to erect an office building, was required to enter into a contract with Houston Gas by which he and his assigns were bound for a period of twenty years to buy from Houston Gas chilled water services for space cooling, at rates to be established by Houston Gas from time to time, to be applicable to the Nassau Bay Center development in which Powers built.

In 1977, about three years later, Powers' successor in title refused any longer to comply with the contract, as illegally confected and non-binding, and it installed its own chilling units, as much more economical. Houston Gas did not sue Powers at this time for breach of the contract.

Instead, in September 1978 Houston Gas sold to Thermal, a newly formed corporation, its Nassau Bay central plant and as-

signed to Thermal all its contractual rights of exclusive chilling service to the buildings erected in the Nassau Bay development. Thermal had been formed for this purpose at the instigation of a principal executive of Nassau, who was also a principal stockholder of the new corporation. He and a Houston Gas executive were members of the three-person board of directors for Thermal; and both he and the Houston Gas executive had been involved as representatives of Nassau and Houston Gas in communications with Powers, the plaintiff, in unsuccessful efforts to force Powers to comply with the requirements of the Nassau-Houston Gas exclusive-chilling contract as to additional buildings Powers had constructed on land purchased from Nassau.

A year later, on September 13, 1979, Thermal filed suit in state court against Powers. Thermal alleged it was the assignee of the exclusive chilling contract entered into with Houston Gas by Powers in 1973, and that in June 1977 Powers had ceased using the chilled water services as obligated by the contract. Thermal alleged that by Powers' breach of his contract, it was entitled to recover all profits it lost following June 1977, praying for $1,200,000 damages and $400,000 attorneys' fees.

Powers filed the present suit stating antitrust causes of action on February 20, 1981. Made defendants were Houston Gas, Nassau, and Thermal, on allegations that they combined and conspired to coerce all individuals forced to enter into illegal monopolistic contracts with Houston Gas from questioning or breaking them, and that the purpose of the state court suit was to harass and intimidate persons by utilizing such costly litigation as an integral part of a scheme for maintaining their monopolistic stranglehold over chilled and hot water service for the office buildings in the Nassau Bay development.

The principal issue of this appeal is whether the 1978 state court suit filed by Thermal prevented application to this February 1981 antitrust damage suit of the statutory four-year time-bar as to such suits, 15 U.S.C. § 15b.

In granting summary judgment dismissing Powers' suit, the district court held that the undisputed factual showing was that the last payment by Powers individually (who had sold his property) under the allegedly illegal contract had been made no later than January 1977 (a ruling we accept for present purposes), more than four years before this February 1981 anti-trust suit.

As to the filing of Thermal's state court suit, the district court held, relevantly, that it was merely a suit based upon a unilateral cause of action for breach of contract and that (based upon the defendants' affidavits and depositions) it was not shown to have been brought for anticompetitive purposes as a result of a conspiracy or agreement with others to institute the law suit or as part of a conspiratorial scheme to enforce an illegal contract. For reasons to be stated (see III, *infra*), we hold that summary judgment was improvidently granted on this ground because of disputed issues of material fact on the factual showing made. Preliminarily, however, we will address the issue of the illegality of the Nassau-Houston Gas contract (see I, *infra*), as well as the standards applicable to grant of a summary judgment that dismisses an antitrust conspiracy suit (see II, *infra*).

I. *The Underlying Nassau-Houston Gas Agreement*

The ultimate basis of Powers' antitrust causes of action is an allegedly monopolistic illegal agreement entered into in 1963 between Nassau and Houston Gas, and those contracts thereby required to be executed by purchasers of land from Nassau to accept chilling and heating services exclusively from Houston Gas.

At the time of this agreement, Nassau owned a large and mostly undeveloped tract that contained most of the land adjacent to the Johnson Space Center in Houston. By the 1963 agreement, recorded in the conveyance records, Nassau and Houston Gas agreed, inter alia, that Nassau "and its tenants and grantees" would purchase exclusively from Houston Gas for

twenty years "chilled water for its space cooling requirements and hot water or steam for its space heating requirements for all buildings to be built within the [contemplated business] Center"; and also to require every tenant or purchaser of land or space within the contemplated business-center development to enter into a restrictive covenant against their "installing any air conditioning equipment except as necessary to utilize chilled water and hot water or steam to be supplied by Houston [Gas]." The customers were to be charged rates for the first two years as provided by a schedule attached to the agreement, and "at the expiration of the two-year period such rates may be changed by mutual agreement of the parties hereto [*i.e.*, Nassau and Houston Gas]."

■ Thus, this recorded agreement purported to compel all tenants of, or purchasers of land from, Nassau to obtain their heating and cooling exclusively from Houston Gas or its assigns, at rates after two years to be determined solely by Nassau and Houston Gas. Therefore, any tenant or purchaser who desired to acquire premises from Nassau within the large and attractive tract of land described by the recorded 1963 agreement, was also required to buy his heating and cooling services from Houston Gas.

Without substantial dispute, this anti-competition agreement was illegal insofar as it compelled Nassau's tenants or grantees to buy the services exclusively from Houston Gas (and, in fact, a discovery deposition indicates that about in 1980 Nassau itself repudiated the agreement as illegal). *See* Sherman Act, Section 1, 15 U.S.C. § 1 ("Every contract, combination ..., or conspiracy, in restraint of trade or commerce ... is declared to be illegal"), and Section 2, 15 U.S.C. § 2 ("Every person who shall attempt to monopolize, or combine or conspire with any other person or persons to monopolize, shall be guilty of a felony"), *cf.* also, the Clayton Act, Section 3, 15 U.S.C. § 14 (making unlawful tying agreements, whereby a buyer is obliged to purchase only on the condition that he also purchas-

es a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier).

■ Accordingly, if Powers suffered damages as a consequence of this illegal agreement, he is entitled to recover them by civil suit against the parties to the agreement or those acting in concert with them, providing his suit is timely brought. *See* 15 U.S.C. § 15(a): " * * * any person ... injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained * * *." However, any civil action to enforce an antitrust cause of action is "forever barred unless brought within four years after the cause of action accrued." 15 U.S.C. § 15b.

Without substantial doubt, if Nassau and Houston Gas themselves had instituted suit in 1979 (as did Thermal) to enforce the terms of the 1973 contract that had been exacted from Powers as a result of the illegal and monopolistic 1963 agreement between Nassau and Houston Gas, the filing of the suit in 1979 would itself be an overt act in furtherance of the antitrust conspiracy, by reason of which a person aggrieved thereby could sue to recover damages thereby sustained, if the antitrust damage suit was brought within four years thereafter, *i.e.*, before 1983, (as was the present 1981 suit). "In the context of a continuing conspiracy to violate the antitrust laws ... each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and ... as to those damages, the statute of limitations runs from the commission of the act." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971).

The defendants argue, however, that a suit by an alleged antitrust conspirator does not prevent accrual of the four-years limitation bar unless the plaintiff shows that some act constituting antitrust injury had occurred within the four years preceding the antitrust suit itself. The defendants base this argument on some language

in our opinion in *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The distinguishable issue in that case, to which this language was addressed, was that the alleged antitrust violator's suit, relied upon to prevent accrual of the four-year limitations, was not brought to enforce an illegal antitrust agreement itself, but rather to recover under a changes agreement for new work that the violator had no part in ordering done. *Id.,* 677 F.2d at 1054. Thus, unlike the present case, allowing recovery on the suit would not "be tantamount to having the court enforce the precise conduct that the antitrust laws forbid." *Id.,* 677 F.2d 1058.

Specifically contrary to the defendant's contention, in the cited *Kaiser Aluminum* decision we noted with approval the holding of other decisions that "antitrust violators engaged in an overt act in furtherance of the conspiracy for statute of limitation purposes when they filed suit to enforce the actual conduct that was claimed to be violative of the antitrust laws," and we there stated that "initiation of a suit in such situations would be an act that caused the plaintiff an antitrust injury." 677 F.2d at 1055. *See also Weber v. Consumers Digest, Inc.,* 440 F.2d 729, 731 (7th Cir. 1971). Thus, under present circumstances, if Nassau and Houston Gas themselves had filed the 1979 state court for breach of the illegal contract, the filing of the suit would itself have been an "overt act in furtherance of an antitrust conspiracy" and thus "by its very nature ... a continuing anti-

trust violation." *Kaiser Aluminum, supra,* 677 F.2d at 1051.

The time-bar issue thus posed before us is whether a different result obtains because the 1979 state-court suit for breach of the illegal contract was filed—not by the alleged antitrust conspirators themselves, but—by Thermal, ostensibly a third party, to whom one of the conspirators, Houston Gas, had assigned its rights under the agreement. Powers contends that Houston Gas and Nassau conspired with Thermal to have the latter bring the state court suit as part of the conspiracy to enforce the illegal monopolistic agreements;[1] and if this is sufficiently shown, as is not disputed, all three conspirators are bound by the acts of any one of them.[2]

The district court held, on summary judgment showing, that no genuine issue of material fact was shown to controvert the defendant's showing (by affidavits and depositions of their officers) that Thermal was formed for legitimate business purposes and that there was no agreement by them to have Thermal file the suit as part of a conspiracy to enforce the monopolistic Nassau-Houston Gas contract. In so holding, we believe the district court improvidently granted summary judgment and that the movants for same did not carry their heavy burden of so removing an issue from the trier of fact.

## II.  *Burden for Movant for Summary Judgment in Antitrust Suit*

In *Hall v. Diamond M Company,* 732 F.2d 1246 (5th Cir.1984), in reversing a district court's grant of summary judgment, we recently summarized the burden upon the movant:

> ants here, instead of one, is irrelevant since the plaintiff has alleged that all three defendants acted in concert. *Cf. Imperial Point Colonnades Condominium, Inc. v. Mangurian,* 549 F.2d 1029, 1043 n. 24 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977) ("defendant cannot escape suit via the statute of limitations by splitting itself into two separate legal entities and causing one of them to force plaintiff to buy the tied product from the other one"); *Kaiser Aluminum,* 677 F.2d at 1052 n. 14 (same).

1. We pretermit, as unnecessary to our decision, whether Thermal, even if not shown to be acting in subjective concert with the other defendants, could itself commit an antitrust violation by filing suit to recover under a contract known by it to have been confected illegally under the antitrust statutes.

2. The alleged tying arrangement in this case is different from the typical tying arrangement, in which a plaintiff agrees to buy both the tying product and the tied product from a single defendant. However, that we have three defend-

[S]ummary judgment is improper "except in cases where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about [the] facts...." [732 F.2d at 1248].

\* \* \* \* \* \*

In ruling on a motion for summary judgment, "the court must indulge every reasonable inference from those facts in favor of the party opposing the motion." *AT & T Co. v. Delta Communications Corp.*, 590 F.2d 100, 101–02 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). And, in order for summary judgment to be granted, "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party, that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc); *Baker v. Raymond International, Inc.*, 656 F.2d [173] at 179 [5th Cir.1981].

In *Transource International, Inc. v. Trinity Industries, Inc.*, 725 F.2d 274 (5th Cir.1984), in which we recently affirmed a grant of summary judgment dismissing antitrust claims, we first stated (citations omitted): "Summary judgment is a 'drastic remedy' and must be approached cautiously. This is especially true with respect to complex antitrust cases where summary judgment is not generally favored." 725 F.2d at 279. We there quoted from *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1111 (5th Cir.1979): "The reason summary judgments may seem less common in antitrust cases is because such cases are ripe with issues of motive, intent and credibility which often must be inferred from the total circumstances." We continued in *Transource*, however, that 725 F.2d at 279:

Despite this strict standard, however, summary judgment is sometimes appropriate in antitrust actions.... While the court must draw all inferences in favor of the party opposing summary judgment, the nonmoving litigant cannot establish a genuine issue of material fact

merely by introducing conflicting testimony. On the contrary, "[t]his Court recognizes that once defendants have made ... sworn denials, summary judgment is appropriate unless plaintiff can produce significant evidence demonstrating the existence of a genuine fact issue." *Parsons v. Ford Motor Com.*, 669 F.2d 308, 313 (5th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). (emphasis added).

The defendants rely with some confidence upon the statement in this and other decisions that, with sworn denial of wrongdoing by the antitrust defendants, the antitrust plaintiff is obliged to produce significant evidence contrary thereto. The statement when made was appropriate insofar as the facts of antitrust violation alleged in the cases in which made.

However, this principle was not intended to apply to a situation where, under the factual showing, a reasonable trier of fact could draw from objective conduct a conflicting inference of anticompetitive intent, despite the defendants' sworn subjectively-based and subjectively-proved denial of anticompetitive motive—which is based essentially on their own testimony as to the substance of private conversations and agreements to which they alone were privy, and as to which no disinterested witness could testify. We do not read the decisions relied upon by the defendants as overruling the well-settled principles that, before granting summary judgment, " 'the court must indulge every *reasonable* inference from [the] facts in favor of the party opposing the motion,' " *Hall, supra*, 732 F.2d at 1249–50, and that summary judgment should not be granted unless " 'the record reveals no evidence from which reasonable persons might draw conflicting inferences about [the] facts.' " *Id.*, 732 F.2d at 1248.

Here, for reasons to be stated, we think that plaintiff Powers has produced a factual showing of sufficient significant probative force, because of reasonable inferences to be drawn from objective facts, to raise a genuine issue as to the truthfulness of the defendants' denials of improper anticom-

petitive motive—which should be decided by the trier of fact and not on a motion for summary judgment.

## III. *Fact Issue as to Conspiracy*

The plaintiff Powers' factual theory of conspiracy is that Thermal was formed and that it initiated suit on the illegal Powers-Houston Gas contract as part of a conspiratorial scheme to enforce the monopolistic agreement by Nassau and Houston Gas, which would require all premise-occupiers in the Nassau Bay development to obtain their chilling and heating services from Houston Gas.

The principal actors in this scheme, as depicted by Powers' showing, would be Presswood, Nassau's executive vice-president (and president of Nassau's parent corporation), and Amann, vice-president of Houston Gas's central plants division. Their discovery depositions were taken by Powers. These executives testified that Thermal had been formed in April 1978 (after Powers' assigns had in 1977 abrogated the 1973 Powers-Houston Gas contract) for legitimate business purposes. They denied that there was any collusion or agreement between Houston Gas, Nassau, and Thermal with regard to the filing of Thermal's suit against Powers in 1979. They further denied any monopolistic intent or any other motive for filing that suit *after* Thermal was incorporated other than to enforce Powers' civil obligations arising out of the breach by him of his 1973 Houston Gas exclusive supplier contract that had been assigned to Thermal by Houston Gas.

The district court accepted this testimony as negativing any antitrust motive or intent of Thermal in filing the suit, and as negativing any conspiracy between the three defendants to do so. We disagree. We think Powers produced a factual showing from which inferences to the contrary of Amann's and Presswood's testimony could be drawn by a reasonable trier of fact.

The factual showing upon which Powers relies for the contrary inferences includes the following:

Thermal was incorporated in April 1978 for the sole purpose of acquiring Houston Gas's Nassau Bay central plant and exclusive chilling and service rights to the buildings in that development; this was effected by sale of September 15, 1978 by Houston Gas to Thermal. At all times prior thereto, Presswood on behalf of Nassau, and Amann on behalf of Houston Gas, had administered operations and contractual regulations under the Nassau-Houston Gas exclusive service contract. They were the officials who, for instance, reached agreement on behalf of the two corporations and executed the contract that permitted in 1976 a third rate increase. The record further indicates that Amann and Presswood were the officials of Nassau and Houston Gas who handled for those companies Powers' complaints with regard to the Houston Gas-Nassau agreement. For instance, they had engaged in unsuccessful efforts to force Powers in 1975 to use Houston Gas's services in two new buildings he was constructing on property acquired from Nassau, as demonstrated by correspondence produced during discovery in connection with their own deposition testimony.

Presswood, who on behalf of Nassau had at an earlier date warned Powers against his liability under the Nassau-Houston Gas contract if he failed to honor Houston Gas's exclusive services rights, instigated the formation of the new corporation, Thermal, to which Houston Gas's rights were assigned. The corporation was formed solely for the purpose of acquiring Houston Gas's operations and rights under its exclusive services contract. Amann, on behalf of Houston Gas, engaged in the negotiations by which Thermal acquired the same. Thermal's three-person board of directors included both Presswood and Amann.

We also note that due to an objection by Presswood's attorney the discovery information was not fully developed as to Thermal's motive in filing the suit against Pow-

ers. In Presswood's discovery deposition, when he was questioned about the filing by Thermal of law suits on the contracts assigned to that corporation by Houston Gas as part of the sale, his attorney objected on attorney-client privilege grounds to any discussion of any testimony regarding the institution of these law suits. Presswood Deposition, Vol. II, pp. 87–91.

Prior to the formation of Thermal and its acquisition of Houston Gas's plant and contract rights, Amann and Presswood, on behalf of Houston Gas and Nassau, had actively engaged in efforts to force Powers to use the Houston Gas-Nassau exclusive services contract. On formation of Thermal, Presswood and Amann retained their corporate offices as executives of Nassau and Houston Gas respectively. The circumstance that Houston Gas and Nassau could not themselves have sought by litigation to enforce the contract directly against Powers after he breached the contract (invalid under antitrust law) in 1977, and that only after Thermal was incorporated and received assignment of the contract was any effort sought to enforce it by litigation, is subject to an inference, explorable by further evidence and cross-examination at trial on the merits, that the formation of Thermal was an attempt to enforce illegal contracts (through an ostensible third person), not themselves enforceable by Houston Gas and Nassau.

On the reasonable inferences that might arise from this not insubstantial factual holding, we are not prepared to hold that a reasonable trier of fact would be unable to disbelieve Amann's and Presswood's denial of conspiratorial anticompetitive intent with regard to Thermal's formation and institution of suit. Because this objective factual evidence permits a reasonable inference by a trier of fact that Presswood's and Amann's sworn denials of improper motive were incorrect, we find that Powers has made a factual showing of sufficient significant probative force to raise a genuine issue of material fact as to whether a continuing conspiracy had resulted in the overt act of filing a state-court suit to enforce an illegal contract within the four-

year limitations period prior to the filing of the suit (which was thus not time-barred).

Accordingly, summary judgment was improvidently granted as to this issue by the district court, and the dismissal of the plaintiff Powers' suit must be reversed.

## IV. *Additional Contentions*

Powers advances two additional contentions to support the claim that his suit is not time-barred.

■ The first is that the "continuing violations" exception, *Zenith, supra,* 401 U.S. at 338–40, 91 S.Ct. at 806–07, applies because he made payments under the water service contract to Houston Gas within the four year period prior to filing suit. The district court held that there was no genuine dispute as to this issue. The court premised its holding on the finding that Powers had failed to make a factual showing that he did in fact make the alleged payments within the limitations period. The district court's ruling on this issue is not erroneous, and we affirm it, for the reasons stated by it. At the same time, we note that the district court has the authority to reconsider its ruling (which is, on the remand, a partial summary judgment) at any time before final judgment, if Powers can in the future make a factual showing that raises a genuine dispute as to this issue. *Dyal v. Union Bag-Camp Paper Corporation,* 263 F.2d 387, 394 (5th Cir. 1959); Wright & Miller, 10A *Federal Practice and Procedure* § 2737 (1983).

■ Powers' second additional contention is that his suit is not time-barred because, when the original antitrust violation occurred, in 1973, his damages were speculative or unprovable because of the contractual rights of Houston Gas and Nassau to raise rates at their will. The district court implicitly rejected this argument. The district court ruled that Powers had made no factual showing that he had made payments under the water service contract within the limitations period ending in February 1977. Thus, under this ruling, Pow-

ers' antitrust damages became provable (including any rate raises) more than four years before he filed this suit in 1981. The "speculative damages" exception, *Zenith, supra,* 401 U.S. at 339–40, 91 S.Ct. at 806–07, is therefore inapplicable. Of course, if Powers can make sufficient showing that he did make the alleged payments within the limitations period, the district court may then reconsider the applicability of this exception. *Dyal, supra,* 263 F.2d at 294; Wright & Miller, *supra,* at § 2737.

*Conclusion*

For the reasons set forth, we AFFIRM as an interlocutory partial summary judgment the district court's finding that the plaintiff Powers did not prove any individual payment by him on the allegedly illegal contract within the four-year limitations period prior to the present suit. However, for the reasons stated, we otherwise REVERSE the summary judgment dismissing the plaintiff's suit as time-barred, and we REMAND for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.