Ralph HALL

v.

DIAMOND M COMPANY Transocean Contractors, Inc. M/V Fortune.

Civ. A. No. 81-5034.

United States District Court, E.D. Louisiana.

May 23, 1986.

Richard A. Thalheim, Jr., Thibodaux, La., for plaintiff.

Michael Mentz, Metairie, La., for defendant.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

The defendant Diamond M Company (Diamond M) has renewed its motion for summary judgment on the plaintiff Ralph Hall's Jones Act claim against it. Diamond M alleges that Hall's attempt to sue it under the Jones Act must fail as a matter of law because no facts support his contention that he was Diamond M's borrowed employee. Now, after a review of the record and the materials submitted by the parties, I find that the defendant's motion must be GRANTED.

FACTS

The plaintiff was injured on November 4, 1981 while employed as an offshore rigger by defendant Transocean Contractors (Transocean), a subcontractor of offshore labor. At the time of his injury, the plaintiff was helping to move the drilling rig Diamond M Century (chartered by Gulf Oil Company), and was working aboard a boat named the M/V Point Fortune (also chartered by Gulf) as an anchorhandler. Not surprisingly, his job was to assist in han-

dling the heavy anchors used to anchor the Diamond M Century to the ocean floor. Diamond M, the moving defendant, is a drilling company which was hired by Gulf at the time of the accident to supervise the work done by the Diamond M Century.

The plaintiff's job involved the handling of the large cables to which the Diamond M Century's anchors were attached. On November 4, 1981, near the end of his shift, he was injured when one of the cables with which he was working knocked him to the floor of the M/V Point Fortune.

The plaintiff brought suit for negligence under the Jones Act and for maintenance and cure under the general maritime law against his employer, Transocean, and Diamond M, which he alleges to be his pro hac vice employer. He also sued the vessel M/V Point Fortune in rem under the general maritime law for unseaworthiness. Thereafter, Hall brought a motion for summary judgment to be recognized as a seaman entitled to maintenance and cure, and the court ruled that he was not a seaman. Diamond M then moved for summary judgment on the claims against it on the ground that Hall was not its borrowed servant and that it neither owned nor operated the vessel M/V Point Fortune. That motion was granted.

On appeal, the Fifth Circuit reversed and remanded both issues decided by the District Court. It noted that the law had changed with regard to seaman status during the pendency of the appeal, and that the record was murky on the borrowed employee issue. *Hall v. Diamond M Company*, 732 F.2d 1246, 1250 (1984). The record has since become much clearer, and Diamond M Company now renews its motion for summary judgment on the borrowed employee issue.

DISCUSSION

Summary judgment may be granted only if it appears from pleadings, depositions, admissions and affidavits, considered in the light most favorable to the non-moving party, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56; *United States v. An Article of Drug*, 725 F.2d 976, 984 (5 Cir.1984); *Galindo v. Precision American Corp.*, 754 F.2d 1212 (5 Cir.1985). The principle function of a motion for summary judgment is to show that, in the absence of factual disputes, one or more of the essential elements of a claim or defense before the court is not in doubt and that, as a result, judgment should be entered on the basis of purely legal considerations. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5 Cir. 1986). In deciding a motion for summary judgment, the court must treat the motion critically, and review the record for genuine factual issues (even when the motion is unopposed), to ensure that the moving party has carried its burden of proving that none exist. *John v. State of Louisiana (Bd. of T. for State C. & U.)*, 757 F2d 698, 709 (5 Cir.1985); *Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5 Cir.1985); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5 Cir.1986). After such a review the motion can be granted where "the facts and inferences point so strongly and overwhelmingly in favor of one party, that the Court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5 Cir. 1969), *cited in Hall v. Diamond M Co.*, 732 F.2d 1246 (5 Cir.1984). With these principles in mind, I now consider the motion before me.

The borrowed servant doctrine is a venerable one in maritime law, having been around since at least 1909. *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). The purpose of the rule is to place the risk of a worker's injury on his actual rather than his nominal employer by permitting the injured worker to recover from the company that was actually directing his work. *Baker v. Raymond International, Inc.*, 656 F.2d 173, 178 (5 Cir.1981). The rule therefore allows plaintiffs like Mr. Hall to sue a number of "employers", forcing them to argue their respective culpability to the jury. Or an "employer" may argue that it borrowed the

injured worker, in order to limit its liability to Workmen's Compensation. *See e.g. Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5 Cir.1969). So, when it is available, the rule can be a valuable bargaining chip for either party in a maritime lawsuit, depending on the circumstances.

In *Ruiz v. Shell Oil*, 413 F.2d 310, 312–13 (5 Cir.1969), the Fifth Circuit suggested nine factors to be evaluated when determining whether the borrowed employee doctrine applies, in either a Longshoreman's Compensation case or a Jones Act case.[1] They are:

1) who has control over the employee and work he is performing, beyond mere suggestion of details or cooperation?

2) whose work is being performed?

3) was there an agreement, understanding or meeting of the minds between the original and the borrowed employer?

4) did the employee acquiesce in the new work situation?

5) did the original employer terminate his relationship with the employee?

6) who furnished the tools and place for performance?

7) was the new employment over a period of time?

8) who had the right to discharge the employee?

9) who had the obligation to pay the employee?

The first factor is the one to weigh most heavily in determining whether an employee has been borrowed, but no fixed test should be applied. *Ruiz, supra*, at 312; *Capps v. N.L. Baroid—NL Industries, Inc.*, 784 F.2d 615, 617 (5 Cir.1986).

The first and most crucial factor weighs in favor of the defendant. The plaintiff was directly supervised by a Transocean employee, not by anyone connected with Diamond M. Although he may have been given orders by the captain of the boat on which he was working, it is undisputed that the boat was hired by Gulf, not Diamond M, and that the orders given by the captain concerned the safety and maintenance of the boat rather than the plaintiff's job as an anchorhandler. And though Diamond M may have given some orders to the plaintiff's supervisor (such as which anchor to move next), those orders were of a very general kind, and did not amount to the control of the plaintiff which is necessary to find for a borrowed employee relationship to exist. As was noted long ago, a careful distinction must be made "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a large undertaking." *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909), cited *with approval* in *Ruiz*, at 313. Here, the relationship of Diamond M to the plaintiff was one of cooperation, rather than direct and plenary control.

The plaintiff fares better as to the second factor, for he was certainly doing the work of Diamond M at the time he was injured. Diamond M is a driller, and in order to drill, required that the drilling platform be moved. Plaintiff was engaged in moving the platform, a part of Diamond M's work. However, I note that the plaintiff was also engaged in the work of Transocean, a subcontractor of maritime work, by performing work for which Transocean had been hired. But on the whole, I find that this factor weighs most strongly in favor of the plaintiff.

The third and fourth factors also favor the plaintiff. Diamond M understood that Transocean employees would assist it by moving the drilling platform, and agreed that they do so as a part of the entire project of drilling. And the plaintiff acquiesced in that situation, knowing that Transocean would send him into various work situations in the course of its business as a labor subcontractor.

---

1. Compare *Capps v. N.L. Baroid-NL Industries*, 784 F.2d 615 (5 Cir.1986) with *Hall v. Diamond M Company*, 732 F.2d 1246 (5 Cir.1984).

But the other factors to be considered work to the defendant's advantage. The plaintiff's original employer never terminated its relationship with the plaintiff, and in fact continued to have the sole right to discharge him and continued to pay his wage. The tools necessary for the job done by the plaintiff were supplied by Transocean or by Gulf as charterer of the M/V Point Fortune, with the exception of the cable itself, which was provided by Diamond M. And the employment at issue was brief, being one in a series of short term jobs undertaken by Transocean as a subcontractor.

■ In light of all these facts, I find that the defendant Diamond M was not the plaintiff's employer. I am aware that the plaintiff, as a seaman, is a ward of admiralty, and that I should normally construe legal questions liberally in his favor. But the question of vicarious liability is an issue which does not turn on the plaintiff's unique relationship with the court, and should be determined without reference to he plaintiff's status as a seaman. *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 455 (5 Cir.1980). Here, the facts and inferences point so strongly and overwhelmingly in favor of the defendant Diamond M that no reasonable jury could find that Diamond M had borrowed the plaintiff on the day of his accident.

Having found that the defendant Diamond M was not an employer of the plaintiff, I must grant the defendant's motion for summary judgment on the claim the plaintiff makes against Diamond M under the Jones Act. M. Norris, *The Law of Seamen*, vol. 2, § 670. But I note that the plaintiff may still be able to state a claim against the defendant on a pure negligence theory if the defendant was at fault in causing the accident. If the plaintiff wishes to adopt that theory now, plaintiff should amend his complaint within 30 days.

CONCLUSION

The defendant's motion is GRANTED.