**Roy HEBRON, Plaintiff–Appellant,**

v.

**UNION OIL COMPANY OF CALIFORNIA et al., Defendants–Appellees.**

No. 79–1859

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Unit A

Jan. 15, 1981.

---

Charles F. Gay, Jr., John R. Martzell, New Orleans, La., for plaintiff–appellant.

James Holmes, New Orleans, La., for defendants–appellees.

Francis Emmett, Randolph J. Waits, New Orleans, La., for Weber Callais.

Philip A. Fant, New Orleans, La., for intervenor.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges:

PER CURIAM:

Roy Hebron had been employed as a painter foreman by Hutco, a division of Ashy–Hutchinson Enterprises. Hutco had contracted with Union Oil of California to provide cleaning and painting services on oil exploration platforms owned and operated by Union Oil. The platform involved in this case was located in the Outer Continental Shelf of the Gulf of Mexico. Hebron had been stationed on the platform for about eight months. He had always received his orders directly from a Hutco employee. On April 12, 1975, the only two men on the platform were Fred Billizon, a Union Oil employee, and Hebron. Since Hebron's supervisor at Hutco would be absent for a week, Hebron was receiving his orders directly from Billizon. On that day, Billizon received an order from his superior to send an A–frame to another platform nearby. The A–frame, which was apparently about ten feet tall, was to be loaded onto the M/V Tommy Brad, a vessel owned by Weber Callais Boat Rentals and time chartered to Union Oil. The seas were running at six to eight feet, which are considered moderately rough, but not necessarily dangerous for loading and unloading equipment. The record shows that similar loading and unloading operations had been conducted successfully and without mishaps under comparable conditions.

After securing the A–frame to the platform crane by means of a hook, Billizon told Hebron to go below to the boat in order to unhook the crane once the A–frame was loaded. The A–frame was lowered successfully onto the deck of the Tommy Brad. Almost immediately, Hebron scaled the ladder on the side of the A–frame and then side–stepped along a crossbar to undo the hook holding the A–frame. With one hand holding onto the A–frame, Hebron reached out for the hook. Hebron successfully opened the hook and separated it from the cables attached to the A–frame. Due to the motion of the boat, however, the hook slipped from Hebron's hand. After a few attempts at reaching for the hook, which was suspended from the platform, Hebron gave up and decided to climb down. It was at that point that the hook latched on to one of the bars of the A–frame, tilting it to one side. This sudden motion threw Hebron off the A–frame and sent him plummeting to the deck ten feet below.

Hebron filed a complaint seeking damages against Union Oil and Weber Callais under the Outer Continental Shelf Lands Act, [OCSLA] 43 U.S.C. §§ 1331–1356 and under general maritime law, including the warranty of seaworthiness. Since § 1333(b) of the OCSLA invokes the provisions of the Longshoremen and Harbor Workers' Compensation Act, [LHWCA], 33 U.S.C. §§ 901–950, the court and parties agreed that the actions against the various parties would be found under 33 U.S.C. § 905(b), since the rules of general maritime law including seaworthiness do not apply in such cases. § 905(b) allows an employee to sue a vessel as a third party under a negligence theory only.

All factual issues were presented to a jury, with the jury serving only in an advisory capacity on the § 905(b) claims. After Hebron presented his case, Union Oil moved for a directed verdict on the OCSLA claim, and both Weber Callais and Union Oil moved for involuntary dismissal under Rule 41(b) of the Federal Rules of Civil Procedure regarding the § 905(b) claims. The court granted all defense motions, holding that Weber was a borrowed servant of Union Oil, that the vessel had not been negligent, and Union Oil had not been negligent in dispatching the vessel.

■ A directed verdict is appropriate if the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable persons could not reach a contrary verdict. *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361 at 362–363 (5th Cir. 1980); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). An employee of one person or company may become the servant of another person or company if he is transferred by the former with his own consent or acquiescence to the employ of the latter. *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253–54, 56 L.Ed.2d 414 (1978). The central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work. *Id.*

■ In the present case, Union Oil had the power to direct and supervise Hebron. Although Union Oil could not discharge Hebron, it had the right to terminate his services with Union Oil. Hebron lived on and ate at Union Oil facilities and was taking orders from a Union Oil employee at the time of the accident. Under the holding in *Gaudet*, we find that the district court was correct in directing a verdict for Union Oil on the ground that Hebron was a borrowed servant.[1] Having determined that Hebron

---

1. Although Hebron had been under the direct supervision of a Union Oil employee for only about a week's period, this does not change the fact that Hebron was a borrowed servant. Regardless of the brevity of his status of taking orders directly from Billizon in this case, Hebron was aware of the risks inherent in his employment with Union Oil. He had been working on a Union Oil platform for a number of months even though most of that had been under the immediate supervision of a Hutco employee. Although he had never unhooked an A–frame, he had experience in loading and unloading sand and paint onto a boat. Additionally, Hebron was very familiar with the type of hook involved in the operation which

was the employee of Union Oil, he is thus covered by the LHWCA, entitling him to workmen's compensation under the act. Workmen's compensation under the LHWCA is an exclusive remedy for an employee, and the Act bars all common law damages against an employer. *Gaudet v. Exxon Corp.*, 562 F.2d at 356; *Lorton v. Diamond M. Drilling Co.*, 540 F.2d 212, 213 (5th Cir. 1976); 33 U.S.C. § 905(a). Thus, any possible negligence of Billizon in the operation of the crane or in ordering Hebron to unhook the crane is not actionable.

■ Thus, Hebron's only other avenue of recovery for tortious actions is one against the vessel or Union Oil as charterer for negligence under § 905(b). After examining the entire record, however, this court concludes that the district court was completely correct in finding no negligence on the part of the vessel owner or the captain. The district court was also correct in determining that Union Oil's dispatching of the vessel was not negligent since the actions of Callais and its employees did not amount to negligence. Since the factual findings of the trial court were not clearly erroneous, the trial court's legal conclusion that Hebron was a borrowed employee was correct and the standard for directed verdict was met in this case, the judgment withstands Hebron's appeal.

AFFIRMED.

resulted in his injuries. Hebron had not considered the operation to be a dangerous one at the time he performed it. Under the guidelines laid down in *Gaudet* and *Ruiz v. Shell Oil Company*, 413 F.2d 310, 312–13 (5th Cir. 1969), the evidence clearly shows that Hebron was a borrowed employee.