Phillip Andrew ALDAY,
Plaintiff-Appellant,

v.

PATTERSON TRUCK LINE, INC., Individually and d/b/a and Atchafalaya Industries, Inc., Defendants-Appellees.

No. 83–4694.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1985.

Richard A. Thalheim, Jr., Thibodaux, La., for plaintiff-appellant.

Allen, Gooch & Bourgeois, Lafayette, La., for defendant-appellee, Patterson Truck Line, Inc.

Russel J. Cromaldi, Franklin, La., for defendant-appellee Atchafalaya Industries Inc.

Before REAVLEY, TATE, and HILL, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Alday, a longshoreman, appeals from the dismissal by summary judgment of his maritime personal injury action. Alday's employer was Atchafalaya Industries, Inc. ("Atchafalaya"), which supplies labor to companies that off-load barges and engage in related activities. Alday's first assignment for Atchafalaya was to work unloading barges for the defendant Patterson Truck Lines, Inc. ("Patterson") at the latter's shipyard. While Alday was unloading a barge for Patterson on his first day of work in Atchafalaya's employment, he was injured while on the navigable waters. The district court granted Patterson summary judgment, finding that he was in maritime employment as a "borrowed employee" of Patterson and, therefore, his exclusive remedy against that defendant was for compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 905(a).[1] On Alday's appeal, we reverse,

1. The district court also dismissed Alday's claim against Atchafalaya. This claim was compro-

because we find that factual issues precluded summary judgment.

## I.

Our past decisions have enunciated several factors to be evaluated in determining whether an amphibious employee becomes the "borrowed" employee of other than his payroll employer, by virtue of which the employee is entitled upon work-injury to receive longshoremen's compensation from the borrowing employer (while the latter is consequently entitled to claim that such compensation remedy bars the employee's suit in tort against him). *Hall v. Diamond M Company,* 732 F.2d 1246, 1249 (5th Cir. 1984); *Gaudet v. Exxon Corporation,* 562 F.2d 351, 355 (5th Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978); *Ruiz v. Shell Oil Company,* 413 F.2d 310, 312–13 (5th Cir.1969). As summarized in *Hall, supra,* 732 F.2d at 1249:

Among the considerations for determining whether a servant has been borrowed by another employer are:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who has the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Ruiz, supra,* the fountainhead of this line of circuit jurisprudence, stated that, although "[t]he factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship", "no one of these factors [*i.e.,* the criteria above-enumerated], or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship." 413 F.2d at 321.

Recognizing this principle, we have nevertheless indicated, in different cases, that certain of these factors may be more important than others, at least in the light of the facts then before the court. Thus, in *Hall, supra,* we gave special weight to control over the employee, 732 F.2d at 1249 (citing the statement in *Hebron v. Union Oil Co. of California,* 634 F.2d 245, 247 (5th Cir.1981) that this is "[t]he central question in borrowed servant cases"). The furnishing of tools and the place of work, whether the payroll employer has actually terminated his relationship with the employee now working on another's premises, and the duration of the "borrowing" relationship and the consequent acquiescence or not of the employee,[2] have been regarded as equally significant factors in others of our decisions. *Gaudet v. Exxon Corpo-*

---

mised subsequent to Alday's appeal and is not before us.

On oral argument on appeal, Patterson's counsel raised a ground for affirmance based upon an alternative contention, which was implicitly rejected by the district court when raised below. He urges that only a state-law tort action was involved (in which event, Louisiana's exclusive compensation remedy would bar recovery in tort against Patterson, as principal employing Atchafalaya to perform its work), because Alday's injury on the barge while in navigable waters was caused by the negligence of a land-based crane operator. The contention is with-

out merit. As we stated in *Kamani v. Port of Houston Authority,* 702 F.2d 612, 613 (5th Cir. 1983) (citations omitted): "Appellant was a longshoreman injured while working on a vessel in navigable waters. The fact that he alleges his injury was caused by the operation of a land-based crane does not change the maritime nature of his claim."

**2.** *See Gaudet, supra,* 562 F.2d at 357: "[W]as the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto?"

*ration,* 562 F.2d 351, 357 (5th Cir.1977); *Dugas v. Pelican Construction Company, Inc.,* 481 F.2d 773, 778 (5th Cir.), *cert. denied,* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973) (according special weight to the contractual agreement between the payroll employer and the borrowing employer that expressly negated any borrowed employee relationship).

## II.

On the basis of the factual showing, the district court granted summary judgment dismissing Alday's maritime tort suit against Patterson, holding that Alday was Patterson's borrowed employee.

"In a ruling on a motion for summary judgment, 'the court must indulge every *reasonable* inference from those facts in favor of the party opposing the motion.'" *Hall, supra,* 732 F.2d at 1249–50 (emphasis the court's). A grant of summary judgment is appropriate only where it appears from the pleadings, depositions, admissions, answers to interrogatories, and affidavits—considered in the light most favorable to the opposing party—that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Shell Oil Company,* 677 F.2d 506, 509 (5th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982), *quoting,* Fed.R.Civ.P. 56(c). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Id.; Murphy v. Georgia-Pacific Corporation,* 628 F.2d 862, 866 (5th Cir.1980). On the other hand, summary judgment on this issue may be appropriate where "sufficient 'determinative factual ingredients,' *i.e., Ruiz* factors, [are] undisputed," since "'the issue of whether a relationship of borrowed servant existed is a matter of law.'" *Gaudet, supra,* 562 F.2d at 357, 358.

The district court's finding that Alday, although employed and paid by Atchafalaya, was a borrowed employee of Patterson was based: (a) upon Alday's deposition testimony, in which he admitted that during his single day of employment prior to his disabling injury the Patterson foreman instructed and supervised him in the performance of his duties, after he had been dropped off at the Patterson shipyard by Atchafalaya with four or five other non-supervisory Atchafalaya employees; and (b) upon the affidavit of Atchafalaya's president that on the day in question Alday was under the control and supervision of Patterson.

## III.

Nevertheless, despite this factual showing supporting an inference of Patterson's supervisory control of Alday on his single day of work as Atchafalaya's employee on Patterson's work-site, the contract between Atchafalaya and Patterson regulating the relationship between these parties included this provision:

It is agreed and understood that any work requested by COMPANY [i.e., Patterson] and agreed to be performed by CONTRACTOR [i.e., Atchafalaya] shall be performed under the terms of this Master Service Agreement and that CONTRACTOR shall be and is an independent contractor, COMPANY being interested only in the results obtained, and having the general right of inspection and supervision in order to secure the satisfactory completion of any such work. *Under no circumstance shall an employee of CONTRACTOR be deemed an employee of COMPANY;* neither shall CONTRACTOR act as an agent or employee of COMPANY. (Emphasis added).

This contract contained further provisions attempting to negate any borrowed employee relationship between Patterson and Atchafalaya's employees. It provided, for example, that "any person who is on CONTRACTOR's payroll and receives, has received or is entitled to receive payment from CONTRACTOR in connection with any work performed or to be performed hereunder shall be the employee of CONTRACTOR even though COMPANY reimburses CONTRACTOR for the amount paid such employee." It further provided:

"CONTRACTOR shall furnish at its own expense and risk all labor, material, equipment, tools, transportation and other items necessary in the performance of the work or services covered hereby, except such of said items as COMPANY specifically agrees in writing to furnish." Additionally, in an apparent attempt to prevent subsequent claims of oral modification between the parties, the contract provided: "No waiver of any provision hereof by COMPANY, or Amendment hereto shall be effective unless it is in writing, and expressly refers to this Agreement."

On full development of the evidence, it is true, a trier of fact might find that, in actual working operations, the parties ignored their solemn contract. On the basis at least of the sparse factual showing here, however, we are unable to say that no factual issue is raised by these contractual provisions, which "negate" any intention on the part of the employers to establish a borrowed employee relationship. *Dugas, supra,* 481 F.2d at 778 (where a similar agreement was held to negate a borrowing employee relationship, under the facts there present).

These contractual provisions nevertheless raise an issue of fact as to Alday's status as an alleged borrowed employee of Patterson that precludes summary judgment, despite the inferences to the contrary that may be drawn from the unopposed affidavit of Atchafalaya's president and the observations of Alday himself as to his working conditions on his single day at work.

This may perhaps more readily be seen if a converse situation is posed. If a third party was injured by Alday's tort on Patterson's premises and sought to hold Patterson liable under respondeat superior as Alday's borrowing employer, such third party plaintiff could not secure a summary judgment holding Patterson liable simply because of a self-serving and conclusory affidavit[3] by Atchafalaya that, contrary to the formal contract between Atchafalaya and Patterson, Atchafalaya had relinquished control of Alday to Patterson, even if Alday's observations (on his single day of work as Atchafalaya's employee on Patterson's premises) seemed to corroborate this testimony.[4] The contractual provision was designed to insulate Patterson from such liability to third persons for Alday's tort. In opposing summary judgment, Patterson would properly urge that, in view of the formal contract between the parties, a trier of fact could conclude—upon further and full development of merit evidence concerning the actual working relationship between the parties under the contract—that indeed Patterson was not liable for the tort of Atchafalaya's employee, since indeed Atchafalaya was an independent contractor conducting general operations under the contract in accordance with the terms agreed upon between the parties.

A third party tort-plaintiff moving for summary judgment could not ignore the contract as creating an issue that required further factual development. In our opinion, neither may Patterson do so, relying only upon a sparse factual showing that merely raises the issue as to whether its responsibility to Atchafalaya's employees was in fact contrary to the formal and

---

**3.** The complete averment of Atchafalaya's president in this regard was: "All laborers supplied by Atchafalaya Industries, Inc., on September 10, 1979 to Patterson Truck Lines, Inc., were to work under the control and supervision of Patterson Truck Line, Inc." The affidavit made no attempt to explain this somewhat conclusory statement, nor the conflict between this conclusory description and the formal written contractual agreement between the parties.

**4.** In *Hall, supra,* summary judgment was reversed that dismissed the plaintiff's suit on borrowed employee grounds, in part on a holding that similar testimony of supervision by the (allegedly borrowing) employer's foreman was unclear as to whether the foreman received his instructions to supervise from the plaintiff's payroll employer. 732 F.2d at 1250. The record here is silent on this feature, and, because of the contract provision allegedly depriving Patterson of supervisory control of Alday, we cannot say without further explanation whether Alday's supervisor was acting on behalf of Atchafalaya rather than his own payroll employer, Patterson.

apparently binding contractual agreement between it and Atchafalaya.

## IV.

In *Gaudet, supra,* 562 F.2d at 359, it is true, summary judgment was upheld against the employee-plaintiff as "borrowed," despite a somewhat similar provision in the contract between the payroll and borrowing employers. However, unlike the facts so far shown by the present record, in *Gaudet* all factors other than the contract pointed to the acquiescence of both payroll employer and the plaintiff employees to the latters' undisputed transfer to exclusive supervision and control by the borrowing employer over an extended period of time (12 years for one plaintiff, 17 for another), under conditions where the employees fully appreciated and accepted the risks of their borrowed employment. *Id.,* 562 F.2d at 358–59. The issue was therefore resolved on the basis of the factual matters not in dispute, which negated the significance of the contract. *Id.*

To the contrary, in the present case, the factual showing thus far educed does not so unequivocally point to a borrowed employee relationship as to permit a summary judgment. We have already noted as significantly creating a factual issue the Atchafalaya-Patterson contract tending to negate a borrowed employee relationship, at least without further explanation.

In addition, under the showing made, Atchafalaya had the exclusive right to discharge Alday and the exclusive obligation to pay him. Alday had been sent to Patterson only for a single day of work, during which he had been injured, and it can hardly be said as a matter of undisputed fact, without further development, that he acquiesced to the transfer of his employment to Patterson and accepted the risks of Patterson's work.[5] Both under the Atchafalaya-Patterson contract and under Alday's deposition testimony, Atchafalaya (not Patterson) furnished him with a hardhat, gloves, safety shoes, and a work uniform. The record does not reflect that Patterson furnished Alday any equipment to use in unloading the barge. Whether indeed Atchafalaya relinquished control over Alday might also, without further factual development, be regarded as subject to dispute, in view of Alday's deposition testimony and reasonable inferences therefrom that Atchafalaya determined from day to day where Alday would work, transported him to and from the worksites, and furnished him with eating and sleeping facilities when off work, in addition to having the exclusive contractual obligation to pay Alday for the work he did and the sole right to discharge him.

Thus, while Atchafalaya's affidavit and Alday's deposition testimony tends to show that on his single day at work he was supervised by Patterson's foreman (*but see* notes 3 and 4 *supra*), this single factor alone does not establish a borrowed employee relationship, in the light of the other above-noted facts shown in this record that cast this conclusion into factual doubt. As stated by *Ruiz, supra,* 413 F.2d at 312, no one of the factors noted as relevant by our jurisprudence "is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship."

On appeal, Patterson cites to us as supporting summary judgment *Huff v. Marine Tank Testing Corporation,* 631 F.2d 1140 (4th Cir.1980) and *Lorton v. Diamond M Drilling Company,* 540 F.2d 212 (5th Cir. 1976). It is sufficient to note that these decisions concern distinguishable facts.

## IV.

The plaintiff Alday also complains of the district court's denial of his motion to amend his original complaint. Alday now

---

5. The record does not indicate that Alday appreciated the dangers associated with his working for Patterson before being dropped off at Patterson's premises. For instance, if those dangers were greater than Alday cared to expose himself to, he could have requested that Atchafalaya give him another job assignment. Construing the record facts in the light most favorable to Alday, we cannot say that Alday had an opportunity to assess the risks of working for Patterson and acquiesced thereto. *See* note 2 *supra.*

complains only of the denial of his amendment to assert any claims he might have as a beneficiary under unspecified hold harmless, waiver of subrogation, and indemnity provisions of the contracts between Atchafalaya and Patterson. Neither in the trial court nor before us does Alday specify the contractual provisions upon which he sought to rely, and what rights they allegedly afforded him against Patterson. The amendment was first proffered two and one-half years after suit was filed.

Under the record as now before us, we find no abuse of the district court's discretion in denying this belated amendment containing conclusory allegations that so far as we can see do not state a claim for relief. *Dussouy v. Gulf Investment Corporation*, 660 F.2d 594, 597–98 (5th Cir. 1981); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir.1969).

*Conclusion*

For the reasons stated, we REVERSE the grant of summary judgment and REMAND for further proceedings consistent with this opinion.

REVERSED AND REMANDED.