**Hartland Dean WEST,
Plaintiff-Appellant,**

v.

**KERR–McGEE CORPORATION, et al.,
Defendants-Appellees.**

**No. 84–3458.**

United States Court of Appeals,
Fifth Circuit.

July 18, 1985.

Tate, Circuit Judge, concurred and filed opinion.

Carl J. Hebert, A. Gill Dyer, New Orleans, La., for plaintiff-appellant.

Christopher Tompkins, Ethel H. Cohen, New Orleans, La., for Kerr-McGee & Home Ind.

Timothy F. Burr, New Orleans, La., for Cabot Corp.

Robert B. Nolan, New Orleans, La., for Case Pomroy & Felmont.

Before GEE, TATE, and HIGGIN-BOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Hartland Dean West, injured in an explosion on an offshore oil platform, sued Kerr-McGee Corporation, the platform operator and majority owner, along with three companies that held minority interests in the platform. The district court filed a thoughtful opinion granting Kerr-McGee's motion for summary judgment on the ground that West was Kerr-McGee's borrowed employee, and that Kerr-McGee thus enjoyed tort immunity under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(a). 558 F.Supp. 669 (E.D.La.1983). Later, finding that Kerr-McGee and its co-platform owners were joint venturers, and that West was the borrowed employee of the joint venture, the court granted the remaining defendants' summary judgment motions. 586 F.Supp. 493 (E.D.La.1984). We conclude that the 1984 amendments to the LHWCA did not abolish the borrowed-employee doctrine, but also hold that the evidence before the district court raised issues of material fact with respect to West's status as a borrowed employee. We must therefore reverse and remand for trial.

## I

In August of 1980, West applied to work for Kerr-McGee. Kerr-McGee wanted to hire West, but because it had filled its employment quota, it arranged an interview for West with one of its labor contractors, Berry Brothers. Berry hired West and sent him to work on offshore platform 229–A, operated solely by Kerr-McGee and owned by Kerr-McGee, Cabot Corporation, Felmont Oil Corporation, and Case-Pomeroy Oil Corporation.

For five months, West worked on the night shift as a "pumper" on the platform, monitoring various gauges and recording data. West's tools, other than a hard hat and shoes which he supplied himself, were provided by Kerr-McGee. West was periodically given instructions from Kerr-McGee supervisors, but he was usually not under direct supervision while on duty. Kerr-McGee employees had the power to grant West leave time, to discipline him, and to dismiss him from the platform. Kerr-McGee was not authorized to fire West from his position with Berry Brothers, though. West, as an employee on the Berry Brothers payroll, had a lower priority than Kerr-McGee employees in selecting sleeping quarters and obtaining transportation to and from the mainland.

The Master Service Contract between Berry Brothers and Kerr-McGee contained the following language:

Contractor [Berry Brothers] is an independent contractor, free of control and supervision by Kerr-McGee as to the means or manner of performing all work or services hereunder.... Neither Contractor nor any person used or employed by Contractor shall be deemed for any purpose to be the employee, agent, servant, or representative of Kerr-McGee in performance of any work or services ... under this Agreement.

In January of 1981, West was injured in a gas explosion allegedly caused when a Kerr-McGee employee lit a cigarette. West sued Kerr-McGee, alleging negligence, strict product liability under La.Civ.Code art. 2317, and "ruin," or strict premises liability, under La.Civ.Code art. 2322. Later, West amended his complaint to name Cabot, Felmont, and Case-Pomeroy, the platform co-owners, as defendants. The district court, as previously mentioned, granted all defendants' motions for summary judgment.

## II

We first address an issue not briefed by the parties: whether the 1984 amendments to the LHWCA, Pub.L. No. 98–426, 98 Stat. 1639, 1641 (1984), eliminated the concept of a borrowed employee in LHWCA jurisprudence. Our review of the amendment's legislative history and the context of its passage persuades us that Congress did not intend such a result.

Borrowed-servant disputes, as in this case, arise when a defendant who is not a plaintiff's formal employer argues that the plaintiff is *in fact* acting as the defendant's employee. In a second line of cases, where employees of subcontractors have sued general contractors in tort, the general contractors have also asserted immunity under 33 U.S.C. § 905(a) (1976)[1]—not because the plaintiff was a "borrowed" or *de facto* employee of the general contractor, but because of the general contractor's obligation under the pre-1984 LHWCA to guarantee the payment of compensation to subcontractors' employees. See 33 U.S.C. 904(a) (1976).[2] General contractors argued that the *quid pro quo* for their assumption of this duty should be the extension of immunity to them as well as to the direct employer, the subcontractor.

Most courts, including this one, rejected this position, holding that general contractors' statutory duty under the LHWCA was "secondary [and] guaranty-like," and that immunity attached only in the event that a subcontractor failed to secure compensation and the general contractor was forced to pay it. *Probst v. Southern Stevedoring Co.*, 379 F.2d 763, 767 (5th Cir. 1967); *Johnson v. Bechtel Associates Professional Corp.*, 717 F.2d 574, 582 (D.C.Cir. 1983). In June of 1984, however, the Supreme Court reversed the cited D.C. Circuit decision, and adopted the general contractors' argument that they enjoyed LHWCA immunity from subcontractors' employees' tort suits "unless the [general] contractor has neglected to secure workers' compensation coverage after the subcontractor failed to do so." *Washington Metropolitan Area Transit Authority v. Johnson,* — U.S. ——, 104 S.Ct. 2827, 2835, 81 L.Ed.2d 768 (1984). Under *WMATA*, immunity for general contractors became the rule rather than the exception.

Three months later, Congress approved a bill amending the LHWCA. Section 904(a) was rewritten to read, in pertinent part:

> In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.

The following sentence was added to the end of § 905(a):

> For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

As we have previously noted, these amendments overturn *WMATA*, and are applicable to pending cases. *Louviere v. Marathon Oil Co.*, 755 F.2d 428, 429–30 (5th Cir.1985); *Martin v. Ingalls Shipbuilding*, 746 F.2d 231 (5th Cir.1984).

The bare language of the amendment to § 905(a) could also be interpreted as foreclosing any designation of any contractor as the employer of its subcontractors' employees—even if a borrowed-employee relationship existed—unless the subcontractor failed to secure compensation payments. If Congress meant for § 905(a) to be so read, the cases delineating indices of a bor-

---

**1.** Section 905(a), before 1984, read in pertinent part:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee ... except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee ... may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

**2.** Section 904(a), before 1984, read:

> Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

rowed employee would be obsolete. In actions such as this one, where the subcontractor paid LHWCA benefits, the general contractor would have no immunity as a matter of law. Another possible reading, though, is that the "shall be deemed" language of the 905(a) amendment refers only to "deeming" a contractor the employer of a subcontractor's employee when the contractor is not the employee's true employer as well. Under this view, if the contractor *is* the employee's "employer" under the borrowed servant doctrine, the contractor is liable for § 904(a) compensation, and has § 905(a) immunity, whether or not its behavior as a general contractor and insurance guarantor would cause it to be "deemed" an employer under the amended scheme.

■ When, as here, a statute contains "latent ambiguities" despite its superficial clarity, we turn to the statute's legislative history for guidance. *James v. United States*, 760 F.2d 590, 593–94 (5th Cir.1985) (en banc). The legislative history of the 1984 amendments unambiguously demonstrates that Congress's sole purpose in amending § 904(a) and § 905(a) was to overrule *WMATA*, and not to amend the borrowed-servant doctrine or otherwise modify LHWCA law. The report of the Conference Committee that added the § 904(a) and § 905(a) amendments states that *WMATA* "changed key components of what had widely been regarded as the proper rules governing contractor and subcontractor liability under the [LHWCA]," and recites that the amendments "disapprov[e]" *WMATA*. After describing the amendments, the report concludes:

> *WMATA*, the conferees believe, does not comport with the legislative intent of the Act nor its interpretation from 1927 through 1983. The case should not have any precedential effect.

H.R.Conf.Rep. No. 98–1027, 98th Cong., 2d Sess. 24, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2734, 2771, 2774.

■ The narrow Congressional focus on reversing *WMATA* is underscored by the Conference Committee's beginning and ending sentences. Congress characterized *WMATA* as an unwanted deviation from 56 years of precedent. That precedent includes the borrowed-employee doctrine, *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969), as well as the general-contractor rule rejected by *WMATA*, *Probst v. Southern Stevedoring Co.*, 379 F.2d 763 (5th Cir.1967). Indeed, this court has explicitly recognized that *Probst*, whose rule is codified in the 1984 amendments, does not foreclose the possibility that a general contractor may be an employer under the borrowed-servant doctrine. *Champagne v. Penrod Drilling Co.*, 462 F.2d 1372 (5th Cir.1972), *cert. denied*, 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973). The committee language shows that Congress intended to do no more than restore the understanding that existed at the time of *Ruiz*, *Probst*, and *Champagne*. We conclude that the 1984 amendments have no bearing on the borrowed-employee issue before us.

### III

#### –1–

■ This court most recently summarized the inquiries relevant to whether a worker is a borrowed employee in *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 376 (5th Cir.1985): "(1) Who has control over the employee and the work he is performing ...? (2) Whose work is being performed? (3) Was there an agreement ... between the original and borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished tools and place for performance? (7) Was the new employment over a considerable length of time? (8) Who has the right to discharge the employee? (9) Who had the obligation to pay the employee?"

The district court, relying on *Hebron v. Union Oil Co.*, 634 F.2d 245 (5th Cir.1981) and *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969), found control over the employee's activities to be most important. The

deposition testimony indicates that although West was not always under direct supervision, he was answerable to Kerr-McGee supervisory personnel. The record also reflects without dispute that Kerr-McGee could have dismissed West from work on the platform, although it could not have fired him as a Berry employee. Based on this evidence, the court found that Kerr-McGee had much the same control over West as did the employer in *Hebron*, where a directed verdict for the defendant was affirmed.

As we recognized in *Alday*, however, neither control nor any other single answer to the inquiries "is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship." 750 F.2d at 376, *quoting Ruiz*, 413 F.2d at 312. In *Alday*, despite facts indicating that the defendant, Patterson, had exercised supervisory control over the assertedly borrowed plaintiff, Alday, we reversed a summary judgment for Patterson because other factors weighed in favor of Alday. The most significant of these was a provision in the contract between Patterson and Alday's nominal employer, Atchafalaya, which, like the contract between Kerr-McGee and Berry Brothers, recited that under no circumstances would an Atchafalaya employee be deemed a Patterson employee.

■ *Alday* recognized that in *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978), we affirmed a summary judgment for the defendant despite the existence of a similar contract clause. In *Gaudet*, though, all factors other than the contract overwhelmingly established the plaintiffs' borrowed-employee status. The *Gaudet* plaintiffs had worked on an Exxon platform for over 12 years, were furnished tools by Exxon, and were subject to dismissal by Exxon. In *Alday*, by contrast, Alday had been working at Patterson's jobsite for only one day, and Atchafalaya, not Patterson, had paid Alday, supplied his tools, and retained the power to discharge him.

Here, Kerr-McGee signed a contract expressly rejecting the designation of Berry Brothers workers as Kerr-McGee employees "for any purpose." Berry Brothers paid West and provided his LHWCA compensation benefits; West did not participate in any Kerr-McGee benefit scheme. Although Kerr-McGee could dismiss West from the platform, it could not fire him from his position with Berry Brothers. In addition, Kerr-McGee's preferential treatment of its own employees over Berry Brothers employees in transportation and bunking arrangements is inconsistent with the notion that a borrowed servant differs from a true employee only as a paper formality. Even though Kerr-McGee supplied West's tools and had the power to control his actions during his five months on platform 229–A, we hold that as in *Alday*, enough conflicting evidence has been surfaced to make summary judgment for the defense inappropriate. In so holding, of course, we express no opinion concerning the ultimate resolution of the borrowed-servant issue at trial.

–2–

■ West argues that even if he is found to be a borrowed employee of Kerr-McGee at trial, the borrowed-servant doctrine cannot foreclose his claim for "ruin" under La.Civ.Code article 2322. He asserts that because his ruin claim is addressed to the defendants in their capacity as owners of the platform, rather than as his employers, it is analogous to a suit against a vessel owner by the owner's employee. *See Pichoff v. Bisso Towboat Co.*, 748 F.2d 300 (5th Cir.1984); *Smith v. M/V CAPTAIN FRED*, 546 F.2d 119 (5th Cir.1977). These cases, though, are based on the pre-1984 section 905(b) of the LHWCA, a narrow exception to the exclusive employer's liability provisions of § 905(a). Section 905(b) permits tort suits only for injuries "caused by the negligence of a vessel." West's claim for ruin sounds in strict liability, not in negligence. Furthermore, as we held in *Olsen v. Shell Oil Co.*, 708 F.2d 976, 982 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 715, 79 L.Ed.2d 178

(1984), a fixed offshore platform is not a vessel. If, on remand, West is found to be a borrowed Kerr-McGee employee, all of his claims against Kerr-McGee will be barred by § 905(a). *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 341 n. 5 (5th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1316 (1983).

## IV

The district court granted summary judgment for Cabot, Case-Pomeroy, and Felmont based on the following syllogism: (1) West was Kerr-McGee's borrowed employee; (2) Kerr-McGee and the other defendants were joint venturers; (3) therefore, West was the borrowed employee of the joint venture, and all the joint venturers have LHWCA immunity from tort liability. Our reversal of the summary judgment for Kerr-McGee upsets the syllogism's first premise, and requires that we reverse the summary judgments granted to the other defendants as well. We therefore need not address the validity of the rest of the district court's reasoning at this time. If it becomes necessary for us to do so on a second appeal, we will then have the benefit of a factual record fully developed at trial.

The district court's grants of summary judgment to all defendants are REVERSED, and the case is REMANDED for further proceedings.

TATE, Circuit Judge, concurring:

I concur in the reversal result reached by the excellent and scholarly majority opinion. Even if the "borrowed servant" doctrine should be applicable to bar a tort-suit in the present circumstances, summary judgment was improvident under *Alday v. Patterson Truck Line*, 750 F.2d 375 (5th Cir.1985).

Nevertheless, I would prefer to rest our reversal on a broader basis. The plaintiff West sues Kerr-McGee, a platform operator, for tortious injuries received on its platform through Kerr-McGee's fault. The plaintiff West was not an employee of Kerr-McGee; he was working on Kerr-McGee's platform as an employee of Berry Brothers, which had entered into a contract with Kerr-McGee to supply labor services, including those rendered by West in the course of his employment with Berry Brothers. Berry Brothers had secured insurance to pay benefits to any of its injured during employment the benefits to which the employee was entitled under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* ("the Act").

## I.

By its motion for summary judgment, Kerr-McGee—which is *not* West's employer—claims the benefit of the statutory immunity granted to *employers responsible for compensation benefits* by Section 905(a) of the Act, 33 U.S.C. § 905(a) (1984).[1] However, Section 904(a) of the Act, 33 U.S.C. § 904(a) (1984), provides that "a contractor [such as Kerr-McGee] be liable for ... the payment of compensation ... only

---

1. 33 U.S.C. § 905(a), as amended in 1984, provides:

(a) *Employer liability; failure of employer to secure payment of compensation*

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. *For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.* [Emphasis added.]

if a subcontractor [such as Berry Brothers] fails to secure the payment of compensation." [2]

Since the subcontractor Berry Brothers *did* secure the payment of the Act's benefits to its injured employees, the contractor Kerr-McGee, the present defendant, is not liable for compensation benefits. *See* 33 U.S.C. § 904(a), quoted at note 2 *supra*. Under the unambiguous terms of section 905(a), 33 U.S.C. § 905(a)—"The liability of an employer *prescribed in section 904* of this title shall be exclusive and in place of all other liability of such employer to the employee" (emphasis added)—Kerr-McGee is not entitled to the immunity from tort liability granted only where the Act grants a compensation remedy against an "employer."

This Congressional intent is made explicit by the concluding section of section 905(a), as amended in 1984: "For purposes of this ["Exclusiveness of liability"] section, a contractor [here, Kerr-McGee] shall be deemed the employer of a subcontractor's [here, Berry Brothers'] employees *only if* the subcontractor fails to secure the payment of compensation as required by section 904 of this title." (Emphasis added.)

The statutory language is explicit, and it makes functional sense: only where an employer is liable for the compensation remedy provided by the Act is that remedy made exclusive against him for the employee's injuries. It makes no functional sense to hold that a contractor, immune under the Act from compensation remedy for injuries received by a subcontractor's employees, is nevertheless also entitled to tort immunity because of the exclusive nature of the compensation remedy accorded, not at all against the contractor, but solely against the subcontractor. It is statutorily

irrelevant under the Act's compensation scheme that, for third-party tort purposes, the subcontractor's employee may be a "borrowed servant" of the contractor for whose torts the contractor may be liable.

The statutory language is explicit and free from ambiguity. No consideration of the statute itself or of its other provisions gives rise to any implication of doubt as to the legislative intent. "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intent to the contrary, the language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Where, as here, a resolution of a question of federal law turns on a statute, we look first to the statutory language, and *then* to the legislative history *if* the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, ——, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (emphasis added). While this rule of statutory construction is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists," *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981), here nothing in the legislative history nor the statutory scheme as a whole indicates any intent or rational reason why a contractor, immune under the Act from compensation remedy, should be accorded tort-immunity also (based on the exclusive nature of the compensation remedy, when granted) as to the tortiously injured employee of a subcontractor (who, under the Act, *is* liable exclusively for the compensation remedy).

## II.

As the scholarly majority opinion notes, the 1984 amendments to the Act were spe-

---

**2.** 33 U.S.C. § 904(a), as amended in 1984, provides:

Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. In the case of an employer who is a subcontractor, *only if such subcontractor fails to secure the payment of*

*compensation shall the contractor be liable for and be required to secure the payment of compensation.* A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor. [Emphasis added.]

cifically adopted to overrule legislatively a Supreme Court decision that a general contractor enjoyed the tort-immunity conferred by the Act as to work-injuries sustained by a subcontractor's employees, and to make plain that such statutory immunity had never been intended to be conferred unless the contractor himself was liable for compensation benefits under the Act.

The majority concludes that, because of this narrow purpose of the 1984 amendments (as stated by a legislative report) to overrule the unwanted deviation by the Supreme Court decision from 56 years of precedent, the 1984 Congressional clarifications did not intend to disturb the aberrational and thin line of precedent of this circuit that had accorded a general contractor tort immunity for injury to a subcontractor's employee under the "borrowed servant" doctrine.

The Congressional report did not refer to this thin line of mostly Fifth Circuit jurisprudence, totally inconsistent with the general purposes and express language of the 1984 amendments. I do not find the absence of reference to these decisions, in the brief conclusory statement of the legislative report, as any indication that the Congress desired to preserve the precedential effect of all and any pre–1984–Amendment judicial decisions, nor especially of any that were completely contrary to the unambiguous language of the 1984 amendments— which was specifically intended to clarify that a general contractor enjoyed no tort-immunity as to work-injuries sustained by a subcontractor's employee, where that subcontractor had (as here) secured the

payment to the injured employee of compensation benefits accorded him by the Act.

The majority notes that this "borrowed servant" immunity first surfaced in *Ruiz v. Shell Oil Company*, 413 F.2d 310 (5th Cir. 1969). In *Ruiz*, a maritime personal injury suit involving an injured barge worker, the issue on the contractor's appeal from adverse tort judgment was raised by the contractor's contention that the district court had erroneously failed to grant a jury instruction exculpating the contractor from liability on the "borrowed servant" doctrine. (By this instruction, the contractor would receive the Act's immunity if the trier of fact found that the injured barge worker (who was employed by a subcontractor) had become the borrowed servant of the contractor).

The *Ruiz* panel decision affirmed the non-application of the "borrowed servant" doctrine under the facts in that case; but, without discussion or analysis of the Act, assumed that the doctrine was applicable.[3] Subsequently, on authority of *Ruiz*, a scattered line of decisions, *e.g.*, *Hebron v. Union Oil Company of California*, 634 F.2d 245 (5th Cir.1981) and *Gaudet v. Exxon Corporation*, 562 F.2d 351 (5th Cir.1977), has recognized this defense as available to a general contractor when a subcontractor's employee sues the general contractor in tort.

Under the pre–1984 wording of Sections 904(a) and 905(a) of the Act, there may have been room for a construction that the general contractor might be immune from tort suit by a subcontractor's employee if the latter was a "borrowed employee;" or,

---

3. *Ruiz, supra*, 413 F.2d at 312 n. 1, cites six decisions with regard to the application of the doctrine, all of which concerned the liability or not of the general contractor to third persons injured by the tort of a "borrowed employee" (*i.e.*, the subcontractor's employee), and only one of which concerned a waterfront accident. None involved the issue of whether a contractor was relieved of tort liability because of the exclusive compensation remedy, if through his fault he injured the "borrowed employee" himself.

The one waterfront decision, *Standard Oil Company v. Anderson*, 212 U.S. 215, 29 S.Ct.

252, 53 L.Ed. 480 (1909), concerned whether an injured longshoreman could recover against the owner and operator of a winch for injuries received through the negligence of the winchman. The defendant's defense was that the winchman was a borrowed servant of the longshoreman's employer (a master stevedore), so that the stevedore not the winch operator was responsible for the winchman's tort. In holding that the payroll employer of the winchman (the winch operator) was liable for the winchman's negligence, the Court at no point referred to the longshoreman's compensation remedy.

at least, the Supreme Court apparently so found, in its decision that was immediately and retroactively overruled by the Congress as contrary to the legislative intent and statutory scheme of the Act. Whatever merit there may have been to the "borrowed servant" tort immunity judicially granted to that contractor—albeit, without judicial analysis of the Act or reasoned judicial explanation for the immunity—has disappeared with the 1984 clarification of language as above noted. The specific addition of the concluding sentence of § 905(a), 33 U.S.C. § 905(a) (1984) (quoted at note 1 *supra*) states that, with regard to the exclusive liability of an *"employer"* from the compensation remedy provided by the Act, "a contractor shall be deemed the *employer* of a subcontractor's employees *only if* the subcontractor fails to secure the payment of compensation." (Emphasis added.)

Under the present facts, Kerr-McGee (the contractor) was not statutorily liable to the plaintiff West for compensation benefits under the Act, for West's payroll employer, Berry Brothers (Kerr-McGee's subcontractor), had secured payment of the Act's compensation benefits to its employees injured at work on the Kerr-McGee premises. Likewise, not being an "employer" liable for compensation benefits under the Act, Kerr-McGee is unambiguously not accorded by the Act any immunity from tort suit, in this immunity being essentially grounded on the exclusive nature of the Act's compensation remedy when accorded against an *"employer"* liable for such compensation benefits.

*Conclusion*

I concur in the majority opinion of my esteemed brethren, because it reverses the summary judgment as improvidently granted. I would hope that the majority's failure to reverse on the broader statutory ground enunciated by this concurring opinion, an issue raised sua sponte by the court at oral argument, will be reconsidered; if not now, then when the issue is squarely presented by an actual denial of tort recovery under present circumstances.