United States Court of Appeals,

Fifth Circuit.

No. 95-60421.

TOTAL MARINE SERVICES, INCORPORATED;  Aetna Casualty & Surety
Company, Petitioners,

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR;  C.P.S. Staff Leasing;  Employer's Casualty
Insurance Company, Respondents.

July 16, 1996.

Petition for Review of an Order of the Benefits Review Board.

Before JOLLY, DUHÉ, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Total Marine Services, Inc., appeals from a final order of the
Benefits Review Board (the "BRB") awarding CPS Staff Leasing, Inc.,
reimbursement for the compensation benefits it paid under the
Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-
950 (the "LHWCA"), to Wayne Arabie, its injured employee who had
been "borrowed" by Total Marine.  We affirm the BRB's final order
because Total Marine, as Arabie's "borrowing employer," is Arabie's
"employer," and is thus liable for Arabie's compensation benefits
under the express provisions of section 4(a) of the LHWCA, 33
U.S.C. § 904(a).

I

Wayne Arabie is a welder who was formally employed by CPS.
CPS, however, is simply a temporary labor service that supplies
workers to its customers, including Total Marine.  CPS dispatched
Arabie to work under the direction and control of Total Marine at

Total Marine's repair facility pursuant to an oral agreement.  In the course of his work at Total Marine, Arabie injured his neck.

Arabie filed a claim for benefits under the LHWCA against CPS. CPS and its insurer, Employers Casualty Insurance Company (hereafter collectively, "CPS"), in turn asserted a reimbursement claim against Total Marine and its insurer, Aetna Casualty & Surety Company (hereafter collectively, "Total Marine"), on the basis that Arabie was Total Marine's borrowed employee, making Total Marine liable as Arabie's "employer" for his compensation claim under the LHWCA.  CPS eventually settled with Arabie by paying his medical expenses and compensation benefits, leaving only CPS's reimbursement claim against Total Marine.  The parties stipulated that Total Marine was Arabie's "borrowing employer" under the borrowed employee doctrine.

Total Marine filed a motion for summary judgment before the Office of Administrative Law Judges, asserting that § 904(a) precluded its liability for Arabie's compensation benefits.[1]  The administrative law judge (the "ALJ") issued an order dismissing Total Marine in February 1993.  The ALJ concluded that even if Total Marine were Arabie's borrowing employer, Total Marine was a

---

[1]Section 904(a) reads in pertinent part:

> Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title.  In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation....

33 U.S.C. § 904(a) (1994).

contractor and thus could not be held liable for compensation benefits for an employee of its subcontractor, CPS, under § 904(a) because CPS had secured payment of compensation benefits.  CPS appealed to the BRB.

The BRB reversed the ALJ and remanded the case to the ALJ to resolve any remaining issues and to award reimbursement to CPS. The BRB held that a company determined to be an injured worker's borrowing employer under the borrowed employee doctrine is liable for that worker's compensation benefits as that worker's "employer" under § 904(a) notwithstanding that the company is not a contractor whose "subcontractor fail[ed] to secure the payment of compensation" under the second sentence of § 904(a).  *Arabie v. CPS Staff Leasing,* 28 B.R.B.S. 66, 1994 WL 186087 (1994).  The BRB's final order affirmed the ALJ's award of reimbursement on remand.

Total Marine filed a timely appeal of the BRB's final order under section 21(c) of the LHWCA, 33 U.S.C. § 921(c).

II

The broad question we face today is whether a borrowing employer must indemnify an injured worker's formal employer for compensation benefits the formal employer has paid to the injured worker under § 904(a).  More specifically, the question is one of statutory interpretation:  whether the borrowed employee doctrine applies equally to § 904(a) to hold the borrowing employer liable for compensation as the worker's "employer" under the first sentence of § 904(a).  Total Marine argues that the BRB erred in applying the Fifth Circuit's borrowed employee doctrine to negate

3

the clear statutory language of § 904(a). Total Marine argues that the second sentence of § 904(a) provides that a contractor is liable for the compensation benefits of a subcontractor's injured employee only if the subcontractor has failed to secure the payment of compensation. We agree that if the second sentence of § 904(a) clearly were to apply to this situation, Total Marine would not be liable for Arabie's compensation benefits because CPS, as Total Marine's subcontractor, secured the payment of compensation. Based on our decision in *West v. Kerr-McGee Corp.,* 765 F.2d 526 (5th Cir.1985), and Fifth Circuit precedent before the 1984 amendments to the LHWCA applying the borrowed employee doctrine to the LHWCA, however, we cannot agree with Total Marine because Total Marine, as Arabie's borrowing employer, is, as a matter of law, his "employer" in accordance with the first sentence of § 904(a). It follows that the second sentence does not apply because Total Marine, Arabie's § 904(a) "employer," is not a subcontractor. Our reasoning follows.

### III

Our review of the BRB's order is limited to considering errors of law and ensuring that the BRB adhered to its statutory standard of review, namely, whether the ALJ's findings of fact are supported by substantial evidence and consistent with the law.[2]

---

[2]The Director argues that its "administrative construction" of section 904(a) of the LHWCA is entitled to judicial deference. We do not agree. The Supreme Court has recently reaffirmed, "Of course we deny deference "to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.' The deliberateness of such positions, if not indeed their authoritativeness, is suspect." *Smiley v. Citibank (South*

4

*Tanner v. Ingalls Shipbuilding, Inc.,* 2 F.3d 143, 144 (5th Cir.1993) (citation omitted).

A

The borrowed employee doctrine recognizes that

> [o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, *so that he becomes the servant of that person with all the legal consequences of the new relation.*

*Standard Oil Co. v. Anderson,* 212 U.S. 215, 220, 29 S.Ct. 252, 253, 53 L.Ed. 480 (1909) (emphasis added). This doctrine evolved in the tort context to hold the "proper employer responsible for the torts of his employee" under the concept of *respondeat superior. Gaudet v. Exxon Corp.,* 562 F.2d 351, 355 (5th Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978). The Fifth Circuit has applied this traditional tort doctrine to cases arising under the LHWCA. *E.g., Hebron v. Union Oil Co. of California,* 634 F.2d 245 (5th Cir.1981); *Gaudet; see also Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir.1969) (assuming the applicability of the borrowed employee doctrine to the LHWCA but affirming its non-application to the facts of the case). The primary focus of the Fifth Circuit's application of this doctrine to the LHWCA has been the tort immunity provision contained in section 5(a) of the LHWCA, 33

---

*Dakota), N.A.,* --- U.S. ----, ----, 116 S.Ct. 1730, 1732-33, --- L.Ed.2d ---- (1996) (quoting *Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 473-74, 102 L.Ed.2d 493 (1988)). The Director has given us no indication that its construction of the statute is anything other than a litigating position "unsupported by regulations, rulings, or administrative practice."

5

U.S.C. § 905(a).  This section makes compensation benefits the exclusive remedy available to an injured worker from his "employer."  33 U.S.C. § 905(a) (1994).[3]  The Fifth Circuit has extended this tort immunity provision by means of the borrowed employee doctrine to encompass a worker's borrowing employer. *E.g., Hebron, Gaudet.*  In effect, we have read the term "employer" in the LHWCA to include borrowing employers under the borrowed employee doctrine.[4]

B

We have also concluded that a borrowing employer is liable for compensation benefits of its borrowed employee under the LHWCA.  In *Champagne v. Penrod Drilling Co.,* 341 F.Supp. 1282, 1283 (W.D.La.1971), *aff'd,* 459 F.2d 1042 (5th Cir.), *modified on other grounds,* 462 F.2d 1372 (1972), *cert. denied,* 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973), the administratrix of a deceased worker's estate brought suit against Penrod Drilling Company. Penrod had a contract with the deceased worker's formal employer,

---

[3]Section 905(a) reads in pertinent part:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee....
> For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

[4]The LHWCA contains a definition of the term "employer," section 2(4), 33 U.S.C. § 902(4), but it merely limits the meaning of the term to those who carry on at least some "maritime employment" at a maritime location.  It thus is of no assistance in determining the identity of the entity that is to be treated as the "employer" of an injured worker for purposes of the LHWCA.

a temporary labor service, to provide four workers to complement one of Penrod's platform erection crews. The district court dismissed the suit against Penrod on the basis of § 905(a) immunity, relying on the borrowed employee doctrine. *Id.* at 1285. The court held that the worker "was a borrowed or loaned employee and entitled to [claim] the benefits of the applicable compensation statute *against Penrod,* [and was] subject to the limitations [on tort suits] imposed [by § 905(a) ]." *Id.* (citations omitted) (emphasis added). The district court thus made clear the liability of Penrod to pay compensation benefits to the estate of the deceased worker.

We affirmed this judgment on the basis of the district court's opinion. *Champagne v. Penrod Drilling Co.,* 459 F.2d 1042 (5th Cir.1972). On petition for rehearing, we re-emphasized the district court's holding that the borrowing employer was liable for compensation benefits to the estate of the deceased employee:

> We remain of the view that whether [the deceased worker] be labeled a borrowed, rented or loaned employee the district court correctly applied the legal standards in determining that [he] was an employee entitled to the benefits of the compensation statute *against Penrod*....

*Champagne v. Penrod Drilling Co.,* 462 F.2d 1372 (5th Cir.1972) (emphasis added), *cert. denied,* 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973). Thus, at least from this point, the law was clear that a borrowing employer was liable for compensation benefits under § 904(a) and entitled to tort immunity under § 905(a). The continued validity of this rule was cast into doubt, however, as a result of a Supreme Court decision and the

7

congressional response to that decision.

C

The Supreme Court in *Washington Metropolitan Area Transit Authority v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984) ("*WMATA* "), addressed the question of contractor immunity under § 905(a) in the absence of a borrowed employee relationship. Reversing a number of circuits, including the Fifth Circuit in *Probst v. Southern Stevedoring Co.,* 379 F.2d 763 (5th Cir.1967), the Court held that a contractor generally is entitled to tort immunity under § 905(a), irrespective of whether the contractor actually secured the payment of compensation. *WMATA,* 467 U.S. at 938-40, 104 S.Ct. at 2835. Congress amended both § 904(a) and § 905(a) in order to reverse the Supreme Court's decision,[5] *Louviere v. Marathon Oil Co.,* 755 F.2d 428, 429-30 (5th Cir.1985), which Congress characterized "as an unwanted deviation from 56 years of precedent." *West,* 765 F.2d at 530.

---

[5]Congress rewrote the second sentence of § 904(a) and added a third sentence. Before 1984, the second sentence of § 904(a) read:

> In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

See note 1 for the current version of § 904(a). Congress also added the following sentence to the end of § 905(a):

> For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

*West,* 765 F.2d at 529 & n. 1.

8

In *West,* we addressed the question whether our borrowed employee doctrine as applied to the LHWCA survived the 1984 amendments to the LHWCA. We held that "[t]he legislative history of the 1984 amendments unambiguously demonstrates that Congress's sole purpose in amending § 904(a) and § 905(a) was to overrule *WMATA,* and not to amend the borrowed-servant doctrine or otherwise modify LHWCA law." *Id.* at 530. We explicitly recognized that our decision in *Champagne* survived the 1984 amendments to the LHWCA: "The committee language shows that Congress intended to do no more than restore the understanding that existed at the time of *Ruiz, Probst,* and *Champagne." Id.* We now turn to the case before us today.

IV

Total Marine argues that the BRB erred when it concluded that "*West* controls the outcome in the present case." Total Marine contends that the court in *West* did not address specifically the issue whether a borrowing employer is liable for compensation benefits under § 904(a), but only addressed the issue whether the borrowed employee doctrine survived the 1984 amendments to the LHWCA. Total Marine relies on Judge Tate's concurrence in *West,* 765 F.2d at 532-535, to argue that "a borrowing employer/general contractor has no tort immunity and no compensation liability when a subcontractor has secured payment of the Act's compensation benefits to its employees."

The problem with Total Marine's argument, however, is that the majority opinion in *West,* not Judge Tate's concurrence, is the law

9

of this circuit. *West* 's holding that the borrowed employee doctrine—with all its legal consequences—survived the 1984 amendments to the LHWCA is binding on this court. As *West* reasoned, "[I]f the contractor is the employee's "employer" under the borrowed servant doctrine, the contractor is liable for § 904(a) compensation, and has § 905(a) immunity...."

Total Marine has stipulated that it was Arabie's borrowing employer. Under the *West* rationale, which binds us, Total Marine is thus Arabie's employer for purposes of the LHWCA. Total Marine, as Arabie's employer, is liable for the payment of Arabie's compensation under the first sentence of § 904(a). The second sentence of § 904(a) does not apply to this case because that sentence applies only to employers who are subcontractors and Total Marine, the employer, is not a subcontractor. We therefore hold that Total Marine, as Arabie's borrowing employer, is liable for Arabie's compensation benefits as Arabie's employer under § 904(a). Because CPS has already paid those compensation benefits, it is entitled to reimbursement from Total Marine.[6]

V

In the light of our explicit holding in *West* and in accordance with our pre-1984 precedent in this area, we conclude that a borrowing employer is required to pay the compensation

---

[6]To the extent that it may be argued that our decisions in *Doucet v. Gulf Oil Corp.,* 783 F.2d 518, 523 (5th Cir.1986) and *Melancon v. Amoco Production Co.,* 834 F.2d 1238, 1247 n. 17 (5th Cir.1988), suggest a different result, we note that we are bound by our earlier decisions in *Champagne* and *West.* *United States v. Miro,* 29 F.3d 194, 199 n. 4 (5th Cir.1994) (citations omitted).

benefits of its borrowed employee, and, in the absence of a valid and enforceable indemnification agreement, the borrowing employer is required to reimburse an injured worker's formal employer for any compensation benefits it has paid to the injured worker.  For the foregoing reasons, the final order of the BRB is

AFFIRMED.