MOORE, Judge.
 

 John M. Sherman (“the employee”) appeals from a summary judgment in which the Mobile Circuit Court ruled that Henry Marine Service, Inc. (“the employer”), had properly secured its liability for benefits due the employee under the Longshore and Harbor Workers’ Compensation Act (“LHWCA”), 33 U.S.C. § 901 et seq., and was, therefore, immune from maritime tort liability. We affirm.
 

 I.
 

 The undisputed material facts show that the employer hired the employee as a marine mechanic on August 5, 1999. He worked for the next two years under the direct supervision and control of the employer. The employee considered himself to be an employee of the employer, and all the work he performed was for the benefit of the employer. The employer had the right to discharge the employee.
 

 On April 19, 2000, the employer entered into a staff leasing agreement (“the agreement”) with AMS Staff Leasing, Inc. (“AMS”). Pursuant to this agreement, AMS reserved the right to direct and control leased employees assigned to the employer’s work site. AMS also assumed responsibility for the payment of wages to be paid to leased employees; the payment of payroll taxes on leased employees; and the payment for workers’ compensation insurance. In return, the employer agreed to reimburse AMS for all those costs and to pay an additional amount to cover AMS’s other costs and profit.
 

 After the employer entered into this agreement, AMS began treating the employee as a leased employee by directly paying the employee’s wages. AMS would then invoice the employer for an amount that would include the employee’s weekly wages, his payroll taxes, the cost of workers’ compensation insurance premiums to cover the employee, and a charge for the services performed by AMS. The employer would then pay the invoice. Athough AMS acknowledged in the agreement that it had informed all the leased employees of the arrangement, the employee testified that he had never met anyone from AMS or even heard of AMS before the time he met with his lawyer to prepare for his deposition in this case. The employee, therefore, asserted that AMS had not exercised any control or direction over his work.
 

 Pursuant to the agreement, AMS purchased from CNA Insurance Company a workers’ compensation insurance policy that provides insurance for claims arising under the LHWCA. AMS is the named insured under the policy. The policy contains an endorsement that provides:
 

 “This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer.... Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.”
 

 The policy did not expressly name the employer as an alternate employer or as an additional insured. However, a schedule attached to the endorsement defines the term “alternate employer” as “ALL USERS OF TEMPORARY EMPLOYEES OF THE NAMED INSURED,” situated in Aabama and states that the endorsement is “APPLICABLE TO EMPLOYEES LEASED TO CLIENT COMPANY UNDER AN EMPLOYEE LEASING ARRANGE
 
 *19
 
 MENT.” (Capitalization in original.) The endorsement further provides:
 

 “The insurance afforded by this endorsement is not intended to satisfy the alternate employer’s duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any governmental agency.”
 

 On April 17, 2001, the employee suffered injuries to the fingers of his hand in an accident while working on a vessel owned and operated by the employer, resulting in a period of disability during which the employee was completely unable to work. From the date of the accident through July 2001, AMS continued to pay the employee’s full salary. From August 2001 to April 2003, when the employee was released to return to work, CNA paid the employee temporary-total-disability benefits and medical benefits pursuant to the LHWCA.
 

 The employee subsequently filed an action against the employer seeking damages based on a variety of claims not at issue in this appeal. After those claims were disposed of on motions for summary judgment, the employee amended his complaint to assert that the employer had failed to secure its liability for LHWCA benefits, thereby exposing itself to maritime tort liability under 33 U.S.C. § 905(a). The parties filed cross-motions for a summary judgment on that claim. The trial court granted the employer’s motion and certified the summary judgment as final, pursuant to Rule 54(b), Ala. R. Civ. P.
 
 [1]
 
 The employee timely appealed from that final judgment.
 

 II.
 

 We review a summary judgment de novo; we apply the same standard the trial court applied. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P.;
 
 see Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the non-movant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d).
 
 See also Ex parte General Motors Corp.,
 
 769 So.2d 903 (Ala.1999);
 
 West,
 
 547 So.2d at 871; and
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary-judgment standard.
 

 III.
 

 33 U.S.C. § 904(a) requires every employer subject to the LHWCA to “secure the payment to his employees of the compensation payable [under the LHWCA].” 33 U.S.C. § 905(a) provides, in pertinent part:
 

 “The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee ..., except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee ... may elect to claim compensation under the chapter, or to maintain an
 
 *20
 
 action at law or in admiralty for damages on account of such injury.... ”
 

 33 U.S.C. § 932(a) prescribes two methods by which an employer may secure its liability under the LHWCA: 1) by obtaining and maintaining insurance with an authorized insurance carrier, or 2) by obtaining authorization to act as a self-insurer.
 

 In this case, the employee asserts that the employer failed to secure its liability for LHWCA benefits under either of the two methods set out in § 932(a), thereby rendering § 905(a) operative and allowing the employee to maintain an action in admiralty for damages on account of his injury. The employee argues that the employer was not named as an additional insured on AMS’s insurance policy and that the schedule contained in the endorsement to AMS’s policy does not cover the employer. The employee further argues that, even if the policy did cover the employer and the employee, by the plain terms of the endorsement the policy did not satisfy the employer’s obligation to secure insurance under the LHWCA.
 

 The employer, on the other hand, asserts that the policy provides LHWCA coverage to it under the terms of the schedule in the endorsement. The employer contends that it was a “user of temporary employees of the named insured,” AMS, and that the employee was a “leased employee” within the terms of an “employee leasing arrangement.” The employer also points out that CNA actually paid the employee all the LHWCA benefits to which he was entitled. These facts, the employer argues, show that, despite the language of the endorsement, it did secure its obligation to provide LHWCA benefits to the employee.
 

 In
 
 Hudson v. Forest Oil Corp.
 
 (No. Civ. A. 02-2225, April 28, 2003) (E.D.La.2003) (not reported in F.Supp.2d), the court considered the identical issue presented here in a case remarkably similar to this one. In
 
 Forest Oil,
 
 a labor supply company assigned Terry Hudson to work on an oil production platform for Forest Oil Corporation. Hudson received injuries in the course of his employment for which he received LHWCA benefits through the labor supply company’s workers’ compensation insurance policy, which was funded by Forest Oil. Hudson then filed an action against Forest Oil seeking tort damages for his injuries. Forest Oil defended on the ground that it was immune from tort liability as a borrowing employer that had secured its liability for LHWCA benefits through its arrangement with the labor supply company. Under those facts, the court in
 
 Forest Oil
 
 held that Forest Oil was a borrowing employer entitled to tort immunity even though it had only indirectly paid for the insurance covering Hudson:
 

 “[I]t is irrelevant for purposes of the instant motion whether or not Forest Oil [i.e., the borrowing employer,] secured payment of workers’ compensation for its borrowed employees. [The labor supply company, i.e., the formal employer,] provided Hudson with compensation benefits through its insurer.... Hudson’s exclusive remedy for the injuries he suffered ... is the workers’ compensation benefits he has already received. Accordingly, [the borrowing employer] is entitled to tort immunity under § 905(a).”
 

 The court thus entered a summary judgment in favor of Forest Oil.
 

 The employee asserts that the holding in
 
 Forest Oil
 
 relies on a footnote in
 
 Melancon v. Amoco Production Co.,
 
 834 F.2d 1238, 1247 n. 17 (5th Cir.1988), that has since been discredited by
 
 Total Marine Services, Inc. v. Director) Office of Worker’s Compensation Programs, United States Department of Labor,
 
 87 F.3d 774, 779 (5th Cir.1996). However, we note that in
 
 *21
 

 Forest Oil
 
 the court cited
 
 Total Marine
 
 and was well aware of the holding in
 
 Total Marine
 
 that a “formal,” or “lending,” employer who has paid LHWCA benefits may seek indemnification from the “borrowing employer.” The
 
 Total Marine
 
 decision does not conflict on any material point with the holding in
 
 Forest Oil.
 
 Therefore, we reject the employee’s attempt to portray
 
 Forest Oil
 
 as unpersuasive authority on this ground.
 

 The employee has submitted a memorandum opinion in
 
 Maxwell v. Carolina Marine Handling, Inc.
 
 (No. CV 2:98-2634-18 and No. CV 2:98-2635-18, Feb. 2, 2000) (D.S.C.2000) (not reported in F.Supp.2d), to support his position. In
 
 Maxwell,
 
 the court initially ruled that Carolina Marine Handling, Inc., was entitled to tort immunity for the death of Ivan Maxwell, an employee borrowed from another business, Cooper River Machine, LLC, because, among other things, Carolina Marine had paid sufficient funds to cover the cost of LHWCA insurance premiums and Cooper River had acquired LHWCA insurance that included an alternate-employer endorsement that covered Maxwell while he was working for Carolina Marine. However, at the time of the court’s ruling, the parties had not obtained a copy of Cooper Marine’s insurance policy, so the trial court ordered that the record could be supplemented when the policy became available. The parties subsequently produced the policy, which showed that, in fact, Carolina Marine was not named or described as an alternate employer. The policy, which contained an endorsement identical to the one at issue in this case, stated that “ ‘[t]he insurance afforded by this endorsement is not intended to satisfy the alternate employer’s duty to secure its obligations under the workers compensation law.’ ” The trial court found that the alternate-employer endorsement in Cooper River’s insurance policy did not cover employees performing work for Carolina Marine and that Carolina Marine had not independently secured coverage or filed proof of any applicable coverage with the United States Department of Labor. Accordingly, the court vacated its earlier order and ruled that Carolina Marine could not claim tort immunity pursuant to 33 U.S.C. § 905(a).
 

 The present case differs materially from
 
 Maxwell
 
 in that the endorsement at issue in this case includes the employer. A schedule attached to the endorsement defines the term “alternate employers” as
 
 “ALL
 
 USERS OF TEMPORARY EMPLOYEES OF THE NAMED INSURED” situated in Alabama and states that the endorsement is “APPLICABLE TO EMPLOYEES LEASED TO CLIENT COMPANY UNDER AN EMPLOYEE LEASING ARRANGEMENT.” (Capitalization in original; emphasis added.) It is undisputed that the employer used the employee, who the employer and AMS treated as an employee of AMS, in Alabama pursuant to an employee leasing agreement. Although the policy does not expressly identify the employer as an alternate employer, the employer certainly fits the broad description of an alternate employer contained in the schedule in the endorsement.
 

 In
 
 Maxicell,
 
 the court did not explain the significance of the language in the endorsement purporting to place an independent duty on the alternate employer to secure its own LHWCA insurance. The
 
 Maxwell
 
 court held that Carolina Marine had a duty to obtain its own LHWCA insurance, but only because it had failed to obtain such insurance through Cooper River. In fact, by finding that Carolina Marine was not an alternate employer, the
 
 Maxivell
 
 court also implicitly found that the entire alternate-employer endorsement
 
 *22
 
 did not apply to the case. The employee has not presented this court with any legal authority construing an alternate-employer endorsement similar to the one at issue in this case to require a borrowing employer who has already secured its liability to an employee for LHWCA benefits through the lending employer to obtain additional LHWCA insurance in its own name for the benefit of the same employee. Based on reasoning similar to the logic employed in
 
 Forest Oil,
 
 we conclude that, for the purposes of protecting its § 905(a) immunity, the employer in the present case had no legal duty to obtain additional LHWCA insurance for the benefit of the employee, regardless of the language of the endorsement.
 

 For the foregoing reasons, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . The summary judgment did not dispose of a third-party complaint filed by the employer against AMS and a cross-claim for indemnification filed by AMS against the employer.