THERIOT, J.
Louisiana Workers' Compensation Corporation ("LWCC") appeals the judgment of the Twenty-First Judicial District Court granting summary judgment in favor of Original USA General Labor, LLC ("Original USA") and its insurer, American Interstate Insurance Company ("AIIC"). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
A-Port, LLC ("A-Port") is a shorebase facility located in Grand Isle, Louisiana that provides crane, forklift, storage, and other services to its customers by transporting inbound and outbound equipment and materials. Occasionally, A-Port requires additional personnel when its permanent employees are on leave or there is an increased demand for services by customers. On June 20, 2012, A-Port entered into a letter agreement with Original USA in which Original USA agreed to provide riggers to A-Port for a fixed rate of $23.00 per hour.
Willie Walton ("Mr. Walton") was hired by Original USA to work as a rigger beginning on May 23, 2011, and was assigned to provide labor services to businesses in the Lafourche/Terrebonne Parish areas. Mr. Walton worked at the A-Port facility from October 20, 2012, until the day he was injured, October 31, 2012. Mr. Walton was injured while assisting the crane operator, Dustin Guidry, in the loading of an industrial mud tank onto a flatbed trailer. Another employee, Clint Givens, was also assisting with loading the mud tank. During this process, Mr. Walton suffered injuries to his left foot and ankle.
*487 Mr. Walton filed a tort suit against Mr. Guidry, Mr. Givens, and A-Port, alleging that the accident and his injuries were caused by the negligence of A-Port and its employees. The defendants in that case filed a motion for summary judgment, contending that they were entitled to judgment as a matter of law on the basis that A-Port was a borrowing employer and, thus, immune from tort liability. The trial court granted their motion for summary judgment, finding there was no issue of material fact that Mr. Walton was the borrowed employee of A-Port and that Mr. Walton's right of recovery was therefore limited to workers' compensation. Upon appeal, this Court affirmed the trial court's findings and held that Mr. Walton was a borrowed employee of A-Port. See Walton v. Guidry , 2015-0196 (La. App. 1 Cir. 9/18/15); 2015 WL 5515725 (unpublished ).
Thereafter, Original USA and its insurer, AIIC, sought and obtained permission to file a petition as intervenors for a third-party demand against A-Port and A-Port's workers' compensation insurer, LWCC. In their third-party demand, Original USA and AIIC alleged that a contract existed between Original USA and A-Port that required A-Port (as a borrowing employer) and LWCC to reimburse Original USA and AIIC for the Longshore & Harbor Workers' Compensation Act[1] ("workers' compensation") benefits and to assume responsibility for the payment of future workers' compensation benefits to Mr. Walton.
On August 10, 2016, LWCC filed an answer to Original USA and AIIC's third party demand, along with a reconventional demand seeking a declaratory judgment that the written contract between A-Port and Original USA barred Original USA and AIIC from seeking reimbursement or recovery of workers' compensation benefits paid from A-Port or LWCC. On August 24, 2016, Original USA and AIIC filed a motion for summary judgment. In their motion, Original USA and AIIC alleged that LWCC was the responsible carrier on Mr. Walton's workers' compensation claim. Specifically, Original USA and AIIC argued that because A-Port was a borrowing employer, LWCC (as A-Por's workers' compensation insurer) was required to pay the workers' compensation benefits of Mr. Walton and to reimburse AIIC for any workers' compensation benefits it had already paid to Mr. Walton. Original USA and AIIC further argued that because the contract contained no valid and enforceable indemnification agreement, no "waiver of subrogation," and no reference to "alternate employer coverage," LWCC was the responsible carrier on this claim. Original USA and AIIC based their arguments primarily on the holding of Sanchez v. Harbor Const. Co., Inc. , 2008-0316 (La. App. 4 Cir. 10/1/08); 996 So.2d 584, writ denied, 2008-2572 (La. 1/9/09); 998 So.2d 720.
In its memorandum in opposition to Original USA and AIIC's motion for summary judgment, LWCC argued that the contract between Original USA and A-Port required that Original USA procure workers' compensation insurance to all Original USA payroll employees, including Mr. Walton. In support of this argument, LWCC points to the contract that provided the hourly rate for riggers, which stated that the hourly rate "includes Original USA General Labor providing the required General Liability and Workers Compensation Insurance for our personnel." LWCC further argued that the AIIC policy issued to Original USA contained an alternate employer endorsement, which, *488 along with the pay rate information, indicates that A-Port would be insured for its compensation obligations as Walton's borrowing employer and that recovery would be waived against the insurer of the borrowing employer. LWCC argued that Original USA and AIIC were therefore not entitled to summary judgment. AIIC argued in response that the alternate employer endorsement proffered by LWCC would not take effect unless there was a contractual requirement to trigger it. AIIC argued that there was no such trigger in the present case.
On November 29, 2016, the trial court granted the motion for summary judgment filed by Original USA and AIIC, dismissing the claims asserted by LWCC in its reconventional and third party demands. On January 6, 2017, the trial court amended its judgment and certified the judgment as final for appeal purposes pursuant to La. C.C.P. art. 1915(B). This appeal followed.
ASSIGNMENTS OF ERROR
Appellant assigns the following as error:
(1) The Trial Court erred in ruling that LWCC is the responsible carrier for Walton's LHWCA benefits when A-Port is an additional insured under Original USA's policy with AIIC, which further states that AIIC will not pursue LWCC as insurer of A-Port, the alternate employer, to recoup any of the benefits it paid to Walton.
(2) In the alternative, if this Court determines that there are factual issues that preclude rendering judgment in favor, then those factual issues preclude rendering judgment in AIIC's favor. If this Court finds any ambiguity in granting LWCC's motion set forth in this appeal, then the judgment of the Trial Court should be reversed and this issue remanded to the Trial Court for the strict construction of AIIC's policy when it seeks to narrow the coverage to its additional insured.
STANDARD OF REVIEW
In determining whether summary judgment is appropriate, appellate courts review summary judgment de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Louisiana Workers' Compensation Corp. v. Landry , 2011-1973 (La. App. 1 Cir. 5/2/12); 92 So.3d 1018, 1021. Accordingly, an appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id.
DISCUSSION
Assignment of Error # 1
Appellants first argue that LWCC is not the responsible carrier for Mr. Walton's benefits because (1) under the insurance policy and the alternate employer endorsement, A-Port is an additional insured, and (2) the insurance policy states that AIIC will not pursue LWCC, as A-Port's insurer, to recoup any of the benefits it paid Walton.
In Total Marine Services, Inc. v. Director, Officer of Worker's Compensation Programs, U.S. Dep't of Labor , 87 F.3d 774, 779 (5th Cir. 1996), the United States Fifth Circuit Court of Appeals held that "a borrowing employer is required to pay the compensation benefits of its borrowed employee, and, in the absence of a valid and enforceable indemnification agreement , the borrowing employer is required to reimburse an injured worker's formal employer *489 for any compensation benefits it has paid to the injured worker." (Emphasis added). Accordingly, LWCC, as the insurer of A-Port, the borrowing employer, is required to pay the benefits of Mr. Walton unless a valid and enforceable indemnification agreement exists between Original USA and A-Port. Therefore, the primary issue of this case is whether a valid and enforceable indemnification agreement exists between Original USA and A-Port. To make this determination, we must decide whether the pay rate information and the alternate employer endorsement are enough to constitute an express indemnity agreement.
Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed. Naquin v. Louisiana Power & Light Co. , 2005-2104 (La. App. 1 Cir. 11/17/06); 951 So.2d 228, 231. The general rules governing the interpretation of contracts apply in construing a contract of indemnity. Id. Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. Civ. Code art. 2051. When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. La. Civ. Code art. 2054.
The Pay Rate Information
The pay rate information provides that the pay rate for riggers is $23.00 per hour and states in relevant part that this rate "is a per hour/per man composite rate that includes Original USA General Labor, LLC providing the required General Liability and Workers Compensation Insurance for our personnel." Appellants argue that this provision triggers the alternate employer endorsement in AIIC's policy. In response, Appellees argue that the pay rate information merely conveys that Original USA agrees to purchase insurance coverage that provides workers' compensation for its direct employees like Mr. Walton.
We agree with Appellees. The pay rate information is similar to a clause analyzed in Sanchez v. Harbor Const. Co., Inc. , 2008-0316 (La. App. 4 Cir. 10/1/08), 996 So.2d 584. In Sanchez , a construction worker was injured while working as a borrowed employee. Sanchez , 996 So.2d at 585. The borrowed employer attempted to deny liability by claiming that a clause in the contract between them and the original employer contained a valid and enforceable indemnification agreement. Id. The clause in question stated, "[The original employer] agrees to provide workers' compensation and general liability coverages within the limits required by [the borrowing employer]." Id. at 588. On appeal, the fourth circuit found that the operative provision of the contract, which was drafted by the original employer, failed to expressly provide for indemnity. Id. The fourth circuit further found that, in light of the contract as a whole and the omission of any reference in any form to "indemnity" in the contract provision, the only reasonable interpretation of the contract was that the original employer was required to carry workers' compensation insurance. Id. The same reasoning applies to the pay rate *490 information provided by Original USA, which simply conveys that Original USA will provide "General Liability and Workers Compensation Insurance" for their personnel. The pay rate information makes no reference to indemnification. As such, the pay rate information fails to establish an express obligation by Original USA to indemnify A-Port.
The Alternate Employer Endorsement
The alternate employer endorsement, which is contained within AIIC's workers' compensation policy, states in relevant part:
This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured. If an entry is shown in Item 3 of the Schedule the insurance afforded by this endorsement applies only to work you perform under the contract or at the project named in the Schedule.
Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.
The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.
We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.
Premium will not be charged for employees while in the course of special or temporary employment by the alternate employer.
The policy may be canceled according to its terms without sending notice to the alternate employer.
Part Four (Your duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.
Schedule
1. Alternate Employer:
All alternate employers that are required by a written contract.
(Emphasis added).
Appellants argue that this alternate employer endorsement is triggered by the pay rate information and that the combination of these two documents results in A-Port becoming an additional insured of AIIC. In response, Appellees argue that the alternate employer endorsement only provides coverage to alternate employers that are required by a written contract. Appellees also point to another clause in the contract-entitled "WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT." This waiver states:
We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations in the Schedule where you are required by a written contract to obtain this waiver from us.
This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
*491 This premium for this endorsement is shown in the Schedule.
...
(x) Blanket Waiver
Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.
(Emphasis added).
According to Appellees, this waiver means that AIIC "will only provide a waiver of subrogation, as would be required for LWCC to escape its obligation to pay back [AIIC] for the workers' compensation benefits already paid to Walton, if Original USA 'has agreed by written contract to furnish this waiver.' " Appellees therefore argue that because there is no additional written contract that requires alternate employer coverage and/or a waiver of subrogation, LWCC is still responsible for the payment of Mr. Walton's workers' compensation benefits.
We agree with Appellees. The plain language of both the alternate employer endorsement and the waiver of subrogation provision indicate that an additional written contract is needed to enforce indemnification. There is no written contract that labels A-Port as an alternate employer, nor is there a written contract providing a waiver of subrogation clause. Accordingly, neither the alternate employer endorsement nor the waiver of subrogation has any effect.
We find that the contract does not contain a valid and enforceable indemnification agreement that relieves LWCC of its obligation to reimburse AIIC for compensation benefits AIIC previously paid to Mr. Walton and its obligation to assume responsibility for payment of future workers' compensation benefits to Mr. Walton. Therefore, this assignment of error is without merit.
Assignment of Error # 2
Appellants argue that if there are factual issues that preclude rendering judgment in LWCC's favor, then those same factual issues also preclude rendering judgment in AIIC's favor. We do not, however, find any existing issues of material fact. As previously stated, the content of the workers' compensation policy issued by AIIC does not expressly provide for indemnification. Accordingly, LWCC is the responsible carrier on Mr. Walton's claim and must reimburse AIIC for all benefits paid to date and assume responsibility for all future payments to Mr. Walton.
This assignment of error is without merit.
DECREE
The judgment of the Twenty-First Judicial Court granting the motion for summary Judgment filed by American Interstate Insurance Company and Original USA General Labor, LLC is affirmed. All costs of this appeal are assessed to Appellant, Louisiana Workers' Compensation Corporation.
AFFIRMED.

See 33 U.S.C. § 901, et seq.